**AMERICAN STANDARD INC., Appellant,**

v.

**PFIZER INC. and Howmedica, Inc., and Biomet, Inc., Appellees.**

Appeal No. 86–1550.

United States Court of Appeals, Federal Circuit.

Aug. 31, 1987.

Jules P. Kirsch, Cooper, Dunham, Griffin & Moran, New York City, argued for appellant. With him on the brief, was Robert D. Katz, of counsel.

Donald E. Knebel, Barnes & Thornburg, Indianapolis, Ind., argued for appellee Biomet, Inc. With him on the brief, was Brian J. Martin.

Gidon D. Stern, Pennie & Edmonds, New York City, argued for appellees Pfizer Inc. and Howmedica, Inc. With him on the brief, were Stephen J. Harbulak and Paul R. Juhasz. Also on the brief, was John E. Kidd, Anderson Russell Kill & Olick, P.C., New York City, of counsel.

Before MARKEY, Chief Judge, SMITH and NEWMAN, Circuit Judges.

MARKEY, Chief Judge.

Appeal from an order of the United States District Court for the Northern District of Indiana granting Biomet, Inc.'s (Biomet's) motion for a protective order to limit the scope of discovery sought by American Standard Inc. (American Standard), and denying in part American Standard's motion to compel discovery. No. S 86–216 (N.D.Ind. July 8, 1986). We affirm.

*Background*

American Standard owns U.S. Patent No. 3,605,123 ('123 patent), entitled "Bone Implant," issued September 20, 1971 to Henry Hahn. The claimed invention relates to prostheses, and discloses an implant for bone tissue having a dense metal base coated with a porous metallic surface layer. American Standard does not manufacture the claimed invention, but has licensed others to do so.

Pfizer Inc., its subsidiary Howmedica, Inc. (collectively Pfizer), and Biomet manufacture orthopedic devices, including bone implants. American Standard unsuccessfully offered Pfizer and Biomet licenses to make the bone implant claimed in the '123 patent.

On December 2, 1983, American Standard sued Pfizer in the District of Delaware, Civil Action No. 83–834 (LON) (Delaware action), alleging infringement of the '123 patent. On the same day, American Standard filed a similar complaint against DePuy, Inc. (DePuy), a bone-implant distributor, in the Northern District of Indiana, Civil Action No. S 83–0552 (Indiana action). Pfizer and DePuy counterclaimed that the '123 patent was invalid because, among other things, the claimed invention lacked utility under 35 U.S.C. § 101 and would have been obvious under 35 U.S.C. § 103. American Standard has also sued Stryker Corp. and Osteonics Corp. in the District of New Jersey, Civil Action No. 85–2428, for infringement of the '123 patent. All three suits are pending. American Standard has not sued Biomet.

On a date undisclosed in the record, Biomet's outside counsel prepared a validity opinion on the '123 patent. Biomet's outside counsel shared that opinion, in confidence, with inside counsel for DePuy's parent company in May 1984. Sometime later, without consulting Biomet, DePuy produced the opinion to American Standard during discovery in the Indiana action.

On November 4, 1985, in connection with the Delaware and Indiana actions, American Standard sought discovery from Biomet in the Northern District of Indiana. That court issued to Biomet and two of its officers subpoenas for testimony and documents. The twenty numbered categories of documents sought included those related to:

1. [T]he design, development, testing or analysis of any bone implant made, used or sold by Biomet.

\* \* \* \* \* \*

3. [T]he fabrication or manufacture of each different bone implant manufactured by or for Biomet, including ... specifications and manufacturing techniques.

\* \* \* \* \* \*

6. (a) Biomet's first sale of a bone implant; (b) Biomet's annual sales of each different bone implant ever manufactured by or for Biomet, including annual, quarterly and other periodic summaries which identify by name, part number or other designation the unit and dollar sales of each different implant manufactured by or for Biomet; and (c) the initial decision by Biomet to market each of its bone implants.

7. [M]arketing plans....

\* \* \* \* \* \*

14. [I]mplant trials, tests or experiments of any kind whatsoever conducted by or on behalf of Biomet.

15. A sample of each different bone implant made, used or sold by Biomet together with all documents which individually or collectively constitute or contain a complete description of all features of such implant....

\* \* \* \* \* \*

For purposes of the subpoenas, American Standard defined "bone implant" to include only devices "having a porous metal layer on a solid metal base."

The subpoenas also requested, among other things, Biomet's correspondence with the Food and Drug Administration (FDA) relating to bone implants, and documents relating to the scope, validity, infringement, and enforceability of the '123 patent. The subpoenas further contained ten enumerated requests, of similar scope, for deposition testimony.

The subpoenas were served on November 5, 1985. During the next several weeks, counsel for American Standard and Biomet attempted to negotiate an agreement to limit the scope of discovery. Failing that, Biomet moved for a protective order under Fed.R.Civ.P. 26(b)(1) and 26(c) on December 23, 1985. Biomet sought to limit discovery to "nonconfidential information pertaining to Biomet's sales of implant devices and nonprivileged information pertaining to Biomet's assessment of the validity of the '123 patent." Biomet said the remaining requested discovery was "not calculated to lead to the discovery of any admissible evidence," arguing it: (1) was not relevant to any issue in the Delaware or Indiana actions; (2) even if relevant,

would impose an undue burden on Biomet; (3) contained trade secrets and confidential business information; and (4) was privileged. Biomet supported its arguments factually with a nine-page affidavit from its Executive Vice President and Secretary.

American Standard followed on January 27, 1986 with a cross-motion to compel discovery under Fed.R.Civ.P. 37(a)(1) and for contempt under Fed.R.Civ.P. 45(f). American Standard argued: (1) the requested discovery was relevant to the issue of utility in the Delaware and Indiana actions; (2) Biomet's sales data were relevant to the issue of obviousness in those actions as evidence of commercial success of the invention claimed in the '123 patent; (3) the protective order entered in those actions would adequately protect any confidential information; and (4) Biomet had waived its attorney-client privilege.

The district court held a hearing on the motions on April 4, 1986.

*The District Court Opinion*

On July 8, 1986, Chief Judge Allen Sharp, who since December 1983 has presided over proceedings in the Indiana action, issued a 14–page Memorandum and Order granting Biomet's motion for a protective order, granting in part and denying in part American Standard's motion to compel discovery, and denying American Standard's motion for contempt.

The district court concluded from Biomet's affidavit and the language of American Standard's subpoenas that the requested discovery encompassed trade secrets under Indiana's Uniform Trade Secrets Act and other confidential information. The court found that Biomet could suffer considerably from disclosure of its trade secrets because disclosure would effectively include most of Biomet's competitors, all parties to the pending lawsuits. Also weighing against disclosure was Biomet's non-party status.

Against Biomet's potential harm from disclosure the district court balanced American Standard's need for relevant information. The court focused specifically on American Standard's requests for Biomet's confidential sales data and certain clinical data.

The district court concluded that Biomet's confidential sales data were not relevant to the commercial-success issue in the Delaware and Indiana actions because the FDA had authorized the sale of Biomet's porous-metal-coated bone implants for use only with bone cement, a use the court said was not contemplated in the '123 patent. The court also found that American Standard had not shown need for Biomet's confidential sales data because similar information was available from the actual defendants in the pending litigation.

Chief Judge Sharp found Biomet's clinical data on the capacity of porous-coated implants to enhance bone ingrowth relevant to the utility issue. Because such information was available from no other implant manufacturer, the district court found that American Standard needed it to prepare for trial.

Finally, the district court determined that Biomet had not waived any attorney-client privilege, and American Standard could not seek certain discovery on that basis.

In granting Biomet's motion, the district court noted, "In this case, there is a significant potential for abuse and this court refuses to permit abuse of pretrial discovery." The court ordered: "Biomet is protected from disclosing all trade secrets and confidential information, *except* Biomet must disclose all information relevant to the clinical analysis which was or is conducted to obtain permission from the FDA to manufacture and sell porous coated bone implants in which the porous coat enhances bone ingrowth." The disclosure by Biomet was made subject to the protective order entered in the Delaware action.

In relation to the Delaware action, American Standard appeals from that part of the district court's order granting Biomet's motion for a protective order and denying in part American Standard's motion to compel discovery. American Standard does not appeal from that part of the order denying its motion for contempt.

In relation to the Indiana action, American Standard does not appeal the district court's order because Chief Judge Sharp will continue to preside over all proceedings in that action, and the present order will be reviewable on appeal from a final judgment on the merits.

### Issue

Whether the district court abused its discretion in granting Biomet's motion for a protective order and denying American Standard's motion to compel discovery of confidential information not related to the utility of porous-coated bone implants for bone ingrowth.

### OPINION

#### A.  *Jurisdiction*

The parties do not dispute, and our precedent recognizes, that this court has jurisdiction to review the district court's order. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.,* 813 F.2d 1207, 1209, 2 U.S.P.Q.2d 1034, 1036 (Fed.Cir.1987); *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1022, 228 U.S.P.Q. 926, 929 (Fed.Cir.1986).

#### B.  *Standard of Review*

■ Regional circuit law dictates the standard of review we apply to orders refusing to compel discovery. *Truswal,* 813 F.2d at 1209, 2 U.S.P.Q.2d at 1036; *Heat & Control,* 785 F.2d at 1022 n. 4, 228 U.S.P.Q. at 929 n. 4. The Seventh Circuit reviews such orders under an abuse-of-discretion standard. *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 563 (7th Cir.1984). Under that standard, "the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather, whether *any* reasonable person could agree with the district court." *Id.* at 563. Under the Seventh Circuit standard, an abuse of discretion occurs when one or more of these circumstances obtains: (1) the record contains no evidence on which the court could rationally have based its decision; *id.* at 564; *Sue v. Chicago Transit Auth.,* 279 F.2d 416, 419 (7th Cir.1960); (2) the decision is based on an erroneous

conclusion of law; *Deitchman,* 740 F.2d at 563; (3) the decision is based on clearly erroneous factual findings; *id.* at 564; (4) the decision clearly appears arbitrary; *Sue,* 279 F.2d at 419.

In *Truswal,* 813 F.2d at 1210–11, 2 U.S. P.Q.2d at 1037, this court remanded because the district court granted a motion to quash on the *sole* ground that discovery was sought from a nonparty, and expressly declined to "hold that all demands for sales information from nonparties must be satisfied in all cases." 813 F.2d at 1211, 2 U.S.P.Q.2d at 1037. Our remand left to the district court a second grant of the motion to quash with articulated reasons. 813 F.2d at 1213, 2 U.S.P.Q.2d at 1039. Here, Chief Judge Sharp incorporated Biomet's nonparty status into his analysis, but did not base his decision solely on that fact. He conducted a thorough inquiry following the steps set forth in *Deitchman,* 740 F.2d at 559; *Centurion Indus., Inc. v. Warren Steurer & Assoc.,* 665 F.2d 323, 325, 213 U.S.P.Q. 36, 38 (10th Cir.1981); and *Coca-Cola Bottling Co. v. Coca-Cola Co.,* 107 F.R.D. 288, 292–93, 227 U.S.P.Q. 18, 21 (D.Del.1985), none of which steps had been taken in *Truswal.* Moreover, unlike *Truswal,* the court here, with affidavits and documents before it, considered and issued a protective order.

#### C.  *American Standard's Arguments*

Arguing that two indicators of abuse of discretion are present here, American Standard says that the record contains no evidence (1) that the subpoenaed information contained trade secrets and confidential information or (2) that Biomet would be harmed by their disclosure; and that the district court committed legal error in (3) concluding that the sales data were not relevant, (4) concluding that American Standard did not need them to prepare for trial, (5) construing the claims of the '123 patent, and (6) concluding that Biomet did not waive its attorney-client privilege.

##### 1.  *Trade Secrets and Confidential Information*

■ "[A] trade secret or other confidential research, development, or commercial

information" may be the subject of a protective order under Fed.R.Civ.P. 26(c)(7). One seeking a protective order under that rule must establish that the information sought is confidential. *Heat & Control,* 785 F.2d at 1025, 228 U.S.P.Q. at 932; *Centurion Indus.,* 665 F.2d at 325, 213 U.S. P.Q. at 38; *Coca-Cola Bottling Co.,* 107 F.R.D. at 292, 227 U.S.P.Q. at 21.

In support of its motion, Biomet submitted an affidavit explaining why the requested discovery contained "trade secrets and other confidential business information":

> Biomet has spent over $3,000,000 in research and development, almost exclusively related to new bone implant devices and technology, including porous coated devices.
>
> \* \* \* \* \* \*
>
> The sales of Biomet porous coated devices have gradually grown as a result of [Biomet's] sales efforts and of the technical advances made by Biomet....
>
> \* \* \* \* \* \*
>
> [The confidential] information is not known outside Biomet's business. Biomet has taken great measures to ensure that all officers, employees, and agents of Biomet guard the confidentiality of such information. Biomet requires that all persons who apply the porous coatings to the implants sign an agreement with Biomet agreeing that they will not disclose anything about the process to anyone and that they will not conduct such processes for anyone else but Biomet. Biomet's Employee Handbook also sets forth that employees shall not divulge any learned trade secret.

American Standard argues that Biomet's affidavit is inadequate to establish any factual basis for the court's finding that the subpoenas requested trade secrets and confidential information. We disagree.

■ It is undisputed that Indiana law controls what is a "trade secret" in this case. To be a trade secret under Indiana law, information must be kept secret and must derive economic value from that secrecy. *Century Personnel, Inc. v. Brum-*

*mett,* 499 N.E.2d 1160, 1164 (Ind.Ct.App. 1986); Ind.Code § 24–2–3–2 (Supp.1986). Biomet's affidavit specifies measures Biomet uses to keep secret the information sought and the value thereof as secrets. American Standard submitted no evidence in rebuttal.

In addition, the subpoenas request types of information that courts have generally viewed as trade secrets or confidential information. *See, e.g., Federal Trade Comm'n v. Lonning,* 539 F.2d 202 (D.C. Cir.1976) (quantitative product formulas deemed trade secrets subject to protective order); *United States v. United Fruit Co.,* 410 F.2d 553 (5th Cir.), *cert. denied,* 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969) (marketing plans protected from discovery); *Coca-Cola Bottling Co.,* 107 F.R.D. at 294, 227 U.S.P.Q. at 22 (Coca-Cola formulae deemed trade secrets subject to protective order); *Spartanics, Ltd. v. Dynetics Eng'g Corp.,* 54 F.R.D. 524, 172 U.S.P.Q. 458 (N.D.Ill.1972) (information relating to marketentry decisions and product fabrication subject to protective order). We conclude that the record contains an adequate factual basis for the district court's finding that the subpoenas request trade secrets and confidential material.

### 2. *Harm To Biomet*

■ Having shown the information sought to be confidential, one seeking a protective order must then demonstrate that disclosure might be harmful. *Heat & Control,* 785 F.2d at 1025, 228 U.S.P.Q. at 932; *Centurion Indus.,* 665 F.2d at 325, 213 U.S.P.Q. at 38; *Coca-Cola Bottling Co.,* 107 F.R.D. at 292, 227 U.S.P.Q. at 21. American Standard argues that the record contains no evidence on which the district court could rationally have based its finding that disclosure of the subpoenaed information might harm Biomet. Again, we disagree.

Biomet included these facts in its affidavit:

> [T]he orthopedic implant industry is a highly competitive industry. Biomet and other manufacturers must engage in competitive pricing, as well as other sales

tactics such as price concessions, to effectively compete with one another. Biomet further carefully controls its development and manufacturing costs to remain competitive with other manufacturers.

\* \* \* \* \* \*

Biomet will sustain irreparable economic harm if the court permits information relating to Biomet's research and development, manufacturing methods and costs, as well as pricing policies, to be divulged to competitors.[1]

■ American Standard objects that Biomet's affidavit is conclusory and fails to explain why the protective order already entered in the Delaware action would not adequately protect its interests.

Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor. *Coca-Cola Bottling Co.*, 107 F.R.D. at 293, 299, 227 U.S. P.Q. at 21, 26; *see United Fruit Co.*, 410 F.2d at 557 & n. 11 (company would be harmed by disclosure of financial and marketing data to competitors); *Advanced Semiconductor Prods., Inc. v. Tau Laboratories, Inc.*, 3 Fed.R.Serv.3d 1389, 229 U.S.P.Q. 222, 224 (N.D.Cal.1986) (that information sought might lead to discovery of admissible evidence insufficient to justify discovery of competitor's confidential information); *Everco Indus. v. O.E.M. Prods. Co.*, 362 F.Supp. 204, 206, 179 U.S. P.Q. 834, 835 (N.D.Ill.1973) (parties' status as competitors a factor in denying discovery of confidential information). The record shows that most if not all of Biomet's competitors are parties to the pending infringement actions.

Nothing in the record rebuts Biomet's statements that discovery will divulge confidential information to its competitors. No party has seen fit to include in the record on appeal a copy of the protective order entered in the Delaware action. On this record, therefore, this court cannot determine whether disclosure would be restricted to counsel. Because the district court ordered some discovery subject to that protective order, we cannot conclude that the court did not consider that option. *Cf. Heat & Control*, 785 F.2d at 1026, 228 U.S.P.Q. at 933 (district court's failure to consider the potential for use of a suitable protective order in granting motion to quash subpoena an abuse of discretion); *Deitchman*, 740 F.2d at 564 (same). We cannot conclude that the record contains no evidence to support the district court's finding that Biomet might suffer harm from disclosure because "disclosure would effectively include most of Biomet's competitors."

### 3. *Sales-Data Relevance*

■ Where a party seeking a protective order has shown that the information sought is confidential and that its disclosure might be harmful, the burden shifts to the party seeking discovery to establish that disclosure of trade secrets and confidential information is relevant and necessary to its case. *Heat & Control*, 785 F.2d at 1025, 228 U.S.P.Q. at 932; *Centurion Indus.*, 665 F.2d at 325, 213 U.S.P.Q. at 38; *Coca-Cola Bottling Co.*, 107 F.R.D. at 292, 227 U.S.P.Q. at 21.

American Standard argues that the district court committed legal error in requiring American Standard to show a nexus between the merits of the invention claimed in the '123 patent and Biomet's confidential sales data. American Standard says that the district court erroneously substituted infringement and nexus for relevance as the standard for determining the scope of discovery under Fed.R.Civ.P. 26(b)(1).

■ We agree that no full-fledged trial on infringement and nexus need be conducted at the discovery stage. *Truswal*, 813 F.2d at 1212, 2 U.S.P.Q.2d at 1038. However, that the district court may unnecessarily have demanded a showing of nexus is not controlling. Judgments are appealed from, not words in opinions. *Black v. Cutter Laboratories*, 351 U.S.

---

1. American Standard states that it did not request information relating to Biomet's manufac- turing costs or pricing policies.

292, 297, 76 S.Ct. 824, 827, 100 L.Ed. 1188 (1956); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1540, 218 U.S.P.Q. 871, 880 (Fed.Cir.1983). To show an abuse of discretion, American Standard must convince us that absence of a demand for a showing of nexus would have compelled a different result. *See Deitchman,* 740 F.2d at 563.

■ Rule 26(b)(1) allows discovery of any nonprivileged matter "which is relevant to the subject matter involved in the pending action." The rule has boundaries, however. Discovery of matter not "reasonably calculated to lead to the discovery of admissible evidence" is outside its scope. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351–52, 98 S.Ct. 2380, 2389–90, 57 L.Ed.2d 253 (1978); *Natta v. Zletz,* 405 F.2d 99, 101 n. 2, 160 U.S.P.Q. 175, 176 n. 2 (7th Cir.1968), *cert. denied,* 395 U.S. 909, 89 S.Ct. 1753, 23 L.Ed.2d 223 (1969); *People's Trust Bank v. United States,* 103 F.R.D. 519, 522 (N.D.Ind.1983) (Sharp, C.J.). One seeking discovery of sales information must show some relationship between the claimed invention and the information sought. Chief Judge Sharp, having presided over the Indiana action for three years, has had the best opportunity to assess whether such a relationship exists here. American Standard has not convinced us that no reasonable person could agree with his assessment. *Deitchman,* 740 F.2d at 563.

American Standard argued before the district court that Biomet's sales data were relevant to the issue of commercial success in the Delaware action solely because the structure of some of Biomet's bone implants fell within the broadest claim of the '123 patent: "A metallic bone implant having a porous metallic surface layer." Biomet does not dispute that some of its implants have that structure.

Biomet's affidavit, however, states these facts suggesting that the nonspecific structure claimed in the '123 patent has had little to do with Biomet's sales:

> Biomet developed its first bone implant device in 1978. Since that time, ... Biomet has spent over $3,000,000 in research and development, almost exclu-

sively related to new bone implant devices and technology, including porous coated devices.

\*     \*     \*     \*     \*     \*

> Biomet has engaged in a vigorous and continuous program of sales promotion and support for its products, including porous implant devices. Biomet has spent over two million dollars to market its products within the medical community.... The sales of Biomet porous coated devices have gradually grown as a result of [Biomet's] sales efforts and of the technical advances made by Biomet.... Recent and significant advances in surgical techniques, instrumentation, and bone implant technology have also greatly contributed to the acceptance of porous implant structures in the marketplace.

■ The district court could have concluded from the evidence before it that many factors unrelated to the claimed invention influenced Biomet's sales. Moreover, unlike the discoverer in *Truswal,* 813 F.2d at 1208, 1212, 2 U.S.P.Q.2d at 1035, 1038, American Standard has not, except in its briefs before the district court, accused Biomet of infringing the '123 patent. The present record adequately supports a determination that American Standard failed to carry its burden to show some relationship between the invention claimed in the '123 patent and Biomet's confidential sales data, and has therefore failed to show that those data were reasonably calculated to lead to the discovery of admissible evidence.

### 4. *American Standard's Need For Biomet's Sales Data*

American Standard argues that the district court committed legal error in ruling that, even if Biomet's confidential sales data were relevant to the Delaware action, American Standard had not shown it needed them to prepare for trial because similar evidence was available from the defendants in the pending litigation and Biomet's data would be "merely cumulative".

■ Although evidence of sales of different infringing articles showing commer-

cial success of the claimed invention cannot be cumulative, *Truswal*, 813 F.2d at 1212, 2 U.S.P.Q.2d at 1038, one seeking discovery of confidential sales information must nevertheless establish that it is reasonably necessary for a fair opportunity to develop and prepare the case for trial. *Heat & Control*, 785 F.2d at 1024, 228 U.S.P.Q. at 931; *Coca-Cola Bottling Co.*, 107 F.R.D. at 293, 227 U.S.P.Q. at 21; Fed.R.Civ.P. 26(b)(1) advisory committee's note to 1983 amendment. To convince us that the district court abused its discretion, American Standard must show that no reasonable person could agree with the district court's conclusion that American Standard failed to establish a need for Biomet's confidential sales data. *Deitchman*, 740 F.2d at 563. American Standard has not done so.

■ The record reveals that American Standard already has some nonconfidential sales information from Biomet. American Standard submitted with its motion to compel discovery several of Biomet's annual reports, which state, in dollar amounts, sales increases attributable to bone implants, including porous-coated devices. Moreover, the district court's order denies discovery only of Biomet's confidential information and trade secrets. American Standard is not precluded from securing nonconfidential sales information from Biomet.

### 5. *Claim Construction*

Asserting that divers data on how Biomet makes its porous-metal-coated implants, i.e., its fabrication and testing data, are relevant and necessary to the issue of utility in the Delaware action, American Standard argues that the district court committed legal error in construing the claims of the '123 patent to determine whether that information was relevant.

■ Where proof of either relevance *or* need is not established, discovery is properly denied. *Heat & Control*, 785 F.2d at 1025, 228 U.S.P.Q. at 932; *Centurion Indus.*, 665 F.2d at 325, 213 U.S.P.Q. at 38; *Hartley Pen Co. v. United States Dist. Court*, 287 F.2d 324, 330–31, 129 U.S.P.Q. 152, 157 (9th Cir.1961). Because we con-

clude that the record supports the district court's determination that American Standard failed to show a need for the information sought, including that on Biomet's manufacturing process, we need not and do not express an opinion on the court's claim construction and the relationship of that construction to relevance.

The '123 patent discloses a porous metal coating applied preferably by a plasma spray process. One of Pfizer's defenses in the Delaware action is that the plasma spray process does not work. Because Biomet uses a plasma spray process on some of its bone implants, American Standard says it needs Biomet's fabrication and testing data as evidence that the process works.

■ Need is enhanced when information is uniquely available from the party from whom it is sought. *See Heat & Control*, 785 F.2d at 1024, 228 U.S.P.Q. at 931; *Deitchman*, 740 F.2d at 561–62; *Carter Prods., Inc. v. Eversharp, Inc.*, 360 F.2d 868, 872–73, 149 U.S.P.Q. 469, 471–72 (7th Cir.1966). The corollary is that need is diminished when the information is available elsewhere. *See Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 556, 142 U.S.P.Q. 256, 259 (N.D.Ill.1964) (allowing discovery of tests on invention's utility only if discoverer unable to conduct such tests on its own). The record here shows that the plasma spray process is old and that information about it is publicly available. Biomet's use of the process is disclosed in publicly available advertising brochures. As American Standard acknowledged at oral argument before this court, discovery of Biomet's trade secrets is not the only way to show that the plasma spray process works.

Moreover, as above indicated, the district court granted American Standard some discovery concerning the porous coatings Biomet uses. The district court ordered Biomet to disclose "all information relevant to the clinical analysis which was or is conducted to obtain permission from the FDA to manufacture and sell porous coated bone implants in which the porous coat

enhances bone ingrowth." Subject to the protective order entered in the Delaware action, American Standard is free to use that information to show that the plasma spray process works and its invention has utility under 35 U.S.C. § 101.

Because American Standard failed to show that Biomet's confidential data on the plasma spray process are reasonably necessary to afford it a fair opportunity to develop and prepare its case in Delaware, we conclude the district court did not abuse its discretion in denying discovery of that information. *Heat & Control*, 785 F.2d at 1024, 228 U.S.P.Q. at 931; *Coca-Cola Bottling Co.*, 107 F.R.D. at 293, 227 U.S.P.Q. at 21; Fed.R.Civ.P. 26(b)(1) advisory committee's note to 1983 amendment.

### 6. *Attorney-Client Privilege*

Biomet owns U.S. Patent No. 4,454,612 ('612 patent), entitled "Prosthesis Formation Having Solid and Porous Polymeric Components," issued June 19, 1984 to John M. McDaniel and Niles L. Noblitt, Biomet's Executive Vice President. The '612 patent discloses a bone implant having a porous polyethylene coating. The patent's specification discusses prior art prostheses having porous coatings of various materials and includes this statement: "A pioneer disclosure of the use of porous metal coatings on a metal core is made in Hahn U.S. Pat. No. 3,605,123." American Standard sought to depose Mr. Noblitt regarding that statement and discovery of all Biomet documents that mention the '123 patent. Biomet says discovery of such testimony and documents would violate an attorney-client privilege *relating to that testimony and those documents.*

As Mr. Noblitt stated in his affidavit before the district court, Biomet retained outside counsel to provide a "legal opinion" on the validity of the '123 patent. After the Indiana action began, Biomet's outside counsel shared that opinion, which concluded that the '123 patent was invalid under 35 U.S.C. § 103, with inside counsel for De-

Puy's parent company, who in turn gave a copy to American Standard.[2]

Thus American Standard does not seek a copy of that opinion, which it already has, but argues that Biomet's sharing of the opinion waived its attorney-client privilege and thereby opened the door to all information about the validity of the '123 patent, including Mr. Noblitt's testimony on the statement in the '612 patent and documents that mention the '123 patent.

In an unfortunately succinct statement, the district court said:

Finally, American Standard seeks discovery based on an alleged waiver of the attorney-client privilege. Biomet sought, from outside counsel, an analysis of the validity of the '123 patent. The opinion letter relies on non-confidential information gleaned from public records or documents. Therefore, there is no privilege in the document. The subsequent disclosure of the validity opinion does not waive any attorney-client privilege. *Accord, American Cyanamid Co. v. Hercules Powder Co.*, 211 F.Supp. 85, 90 (D.Del.1962); *see also*, 3 Lipscomb's, Walker on Patents, § 9:49 pg. 88–89 (3d ed 1985).

Biomet argues that disclosure of its nonprivileged opinion letter could not have waived its attorney-client privilege applicable to the other information sought by American Standard about validity of the '123 patent. American Standard, a nonholder of the privilege, nonetheless asserts it, saying the court erred because the validity opinion was privileged.

Application of the attorney-client privilege is a question of fact. *Hodges, Grant & Kaufmann v. Department of the Treasury*, 768 F.2d 719, 721 (5th Cir.1985); *United States v. Aluminum Co. of Am.*, 193 F.Supp. 251, 253 (N.D.N.Y.1960). Thus, to convince this court that the district court abused its discretion in denying discovery, American Standard must show that the district court's finding that the validity opinion was not privileged is clearly erroneous. *Deitchman*, 740 F.2d at 564.

---

**2.** It is, of course, not surprising that defendants and potential defendants would share with a

patentee-plaintiff an opinion concluding that the patentee's patent is *in*valid.

■ The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients by assuring clients that their disclosures will be held in confidence. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The privilege is that of the client, not that of the attorney. *E.g., Tillotson v. Boughner,* 350 F.2d 663, 665 (7th Cir.1965); 8 J. Wigmore, *Evidence* § 2321 (McNaughton rev. ed. 1961). It protects communications made in confidence by clients to their lawyers for the purpose of obtaining legal advice. *Upjohn,* 449 U.S. at 395, 101 S.Ct. at 685; *Fisher,* 425 U.S. at 403, 96 S.Ct. at 1577; *In re Walsh,* 623 F.2d 489, 492 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). Whether the privilege protects the legal advice given or other communications from the attorney to the client depends on circumstance. It is conceivable that disclosure of the bare fact that counsel was consulted might in some circumstances chill the willingness of citizens to approach a lawyer's office. *See United States v. Tratner,* 511 F.2d 248, 252 (7th Cir.1975). It is clear that disclosure of the lawyer's communication could in itself disclose, directly or indirectly, what the client told the lawyer.

■ The courts have not been clear and of one mind in applying the privilege to communications from attorney to client, such as the legal opinion at issue here. Though the Seventh Circuit has not specifically discussed such communications, it has expressed "general principles" which one district court in that circuit has interpreted as requiring application of the privilege to lawyer-to-client communications that reveal, directly or indirectly, the substance of a confidential communication by the client. *Ohio-Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 28 (N.D.Ill.1980). We agree with that interpretation, and, because there is no such revelation in the opinion letter at hand, we cannot view as clearly erroneous the district court's finding that it was not privileged.

Biomet correctly argued before the district court, as it does here, that the opinion letter was not privileged because it did not reveal, directly or indirectly, the substance of any confidential communication. The letter itself supports that assertion. The "opinion letter" is not signed, is not addressed to Biomet or anyone else, and bears no letterhead or other indication of source. It discusses no prior action of Biomet and recommends no action to be taken by Biomet, but merely concludes that the '123 patent is invalid.

Because the record is devoid of any indication that the validity opinion reveals the substance of a confidential communication by Biomet, we cannot view as clearly erroneous the district court's finding that the opinion was not privileged.

American Standard says that, under the district court's analysis, "advice from counsel containing a legal conclusion about patent validity under the Federal laws could never be privileged even though the advice was prepared specifically for a client." In the context of the facts of this case, we do not agree that the district court's analysis was based on the view that patent validity opinions are subject to treatment different from that given counsel's opinions dealing with other areas of law, or that an opinion could never be a confidential communication when it is based on publicly available information. If that were the district court's view, we would not agree. As noted above, however, this court reviews judgments, not language in opinions. *Black v. Cutter Laboratories,* 351 U.S. 292, 297, 76 S.Ct. 824, 827, 100 L.Ed. 1188 (1956); *Stratoflex,* 713 F.2d at 1540, 218 U.S.P.Q. at 880.

No party in this case has argued, nor did the district court say, that a patent-validity opinion is not a legal opinion, or that the practice of patent law is not the practice of law, or that work-product immunity does or does not apply to any of the discovery American Standard seeks.

■ The view that in-house and outside patent counsels' patent-validity opinions are never protected by the attorney-client privilege, expressed in *United States v.*

*United Shoe Mach. Corp.*, 89 F.Supp. 357, 87 U.S.P.Q. 5 (D.Mass.1950) and *American Cyanamid Co. v. Hercules Powder Co.*, 211 F.Supp. 85, 135 U.S.P.Q. 235 (D.Del. 1962), was dealt a fatal blow by the Supreme Court in *Sperry v. Florida*, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), and was administered the coup de grace by our predecessor, the Court of Claims, in *Ledex, Inc. v. United States*, 172 U.S.P.Q. 538, 539 (Ct.Cl.1972). The current weight of authority, *see In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 390, 202 U.S.P.Q. 134, 143 (D.D.C.1978); *Nestle Co. v. A. Cherny & Sons, Inc.*, 207 U.S.P.Q. 930, 933 (D.Md.1980), to which we would add our own, recognizes that counsel's opinions on patent validity are not denied the client's privilege protection merely because validity must be evaluated against publicly available information.

Moreover, it is not necessary to read the district court's opinion and its citation in the "sky-is-falling" manner employed by American Standard. The district court said the opinion letter was not a privileged communication because it relied on *nonconfidential* information and stated the source of that information. Contrary to American Standard's assertion, it did *not* say the opinion letter was not privileged merely because it relied on publicly available information. It clearly said the letter relied on *nonconfidential information* gleaned from public records. American Standard simply ignores the finding of nonconfidentiality and focuses alone on its source. Indeed, a mere reading of the above-described opinion "letter" demonstrates its nonconfidential nature.

We do not here hold that no patent-validity opinions are ever protected by the attorney-client privilege.[3] Nor do we hold that patent-validity opinions based on publicly available information (as most such opinions are) are for that reason alone outside the attorney-client privilege. Nor do we hold that what the attorney told the client in an opinion letter is always irrelevant. We merely hold that, under the facts of this case, the district court did not err in determining that the opinion letter here at issue did not reveal confidential communications and therefore was not privileged, and that there was, accordingly, no need to consider whether any waiver might have encompassed the particular testimony and documents sought by American Standard and claimed by Biomet as privileged.

### D. *Motion to Strike*

Pending is American Standard's motion to strike two portions of Pfizer's brief on appeal: (1) excerpts from the file history of the '123 patent and arguments based thereon, and (2) reference to Pfizer's motion for summary judgment of noninfringement filed in the Delaware action.

■■ Because no part of the file history of the '123 patent was before the district court, submission of excerpts to this court was improper. *Ballard Medical Prods. v. Wright*, 821 F.2d 642, 643 (Fed.Cir.1987); *Thomas & Betts Corp. v. Litton Sys., Inc.*, 720 F.2d 1572, 1581 n. 6, 220 U.S.P.Q. 1, 7 n. 6 (Fed.Cir.1983). Because the motion for summary judgment in the Delaware action was also not before the district court, having been filed after the appealed order was entered, submission to this court of references to it was equally improper. This court has considered neither of the challenged portions of Pfizer's brief, and American Standard's motion to strike is granted.

### CONCLUSION

The district court conducted an able, thorough, and thoughtful analysis following the steps and conducting the required balancing described in *Heat & Control*, 785 F.2d at 1025, 228 U.S.P.Q. at 932, *Deitchman*, 740 F.2d at 559, and *Centurion Industries*, 665 F.2d at 325, 213 U.S.P.Q. at 38. We find no abuse of discretion in the court's order and affirm it in its entirety.

AFFIRMED.

3. *See Fonar Corp. v. Johnson & Johnson*, 3 Fed. Rules Serv.3d 145, 227 U.S.P.Q. 886 (D.Mass. 1985) (disclosure of validity opinion waived attorney-client privilege).

PAULINE NEWMAN, Circuit Judge, concurring in part, dissenting in part.

I write to express two areas of concern.

## I

I agree with the court's decision that Biomet's confidential sales information is not subject to discovery in the circumstances of this case. However, I observe that this court reached a different conclusion on similar facts in *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 2 U.S.P.Q.2d 1034 (Fed.Cir.1987). I had hoped that the majority might seize this opportunity to shed light on the boundary between these decisions. Although the majority has attempted to point out some differences, I discern scant guidance on which one might rely.

In *Truswal* this court reversed a district court's denial of discovery of confidential sales information of a non-party competitor, stating that the discovery could be had under a protective order although an acceptable order had not yet been fashioned. We now uphold a district court's denial of discovery of confidential sales information of a non-party competitor, despite the existence of a protective order.

In both cases the discovery was sought for the same stated reasons: to bolster the patentee's case of validity in different litigation by showing commercial success of the patented invention in the hands of the non-party. In both cases the non-party had been accused of infringement but not yet sued. In both cases discovery of detailed sales figures was resisted by the non-party on the grounds that it was a competitor, that the detailed sales figures were highly confidential and sensitive, and that the detailed sales figures had not been shown to be necessary to the patentee's case. In both cases the district court granted or the non-party voluntarily provided extensive other discovery.

The majority herein, consisting of the same judges as the majority in *Truswal*, reports that it reversed in *Truswal* because that district court denied discovery "on the *sole* ground that discovery was sought from a nonparty" (emphasis by majority).

However, the *Truswal* district court referred to three aspects of its denial of discovery: (1) that the cited case authority did not support production of (2) confidential sales information by (3) non-party witnesses. *Truswal*, 813 F.2d at 1208, 2 U.S. P.Q.2d at 1035.

In both *Truswal* and the case at bar the district courts exercised their discretion to reach the identical result. Yet in *Truswal* the majority held that the district court abused its discretion, while in this case the panel unanimously upholds the district court.

In matters of discovery the district court has broad discretionary authority, and discovery rulings should not easily be overturned. My colleagues on this panel surely have in mind some controlling distinction between the two cases. I should like to partake of that knowledge, at least to learn whether the opposing results were reached because of differences in facts, or in procedure, or perhaps in quality of advocacy.

## II

I am greatly concerned by the majority's treatment of attorney-client privilege.

As the majority reports, Biomet obtained an opinion of counsel as to the validity of the '123 patent. Biomet's counsel gave a copy of the opinion in confidence to DePuy's counsel. DePuy in turn produced it to American Standard in response to a discovery request, along with two validity opinions that DePuy had obtained from its counsel. DePuy asserted no attorney-client privilege as to any of these opinions.

Thus American Standard had a copy of Biomet's counsel's opinion that the '123 patent is invalid, and sought to depose and have discovery of Biomet's counsel and of a Biomet employee on matters related to the '123 patent.

The district court held that although "Biomet sought from outside counsel, an analysis of the validity of the '123 patent", "there is no privilege in the document" because it "relies on non-confidential information gleaned from public records or doc-

uments". The court therefore held that the disclosure did not waive any attorney-client privilege because there was none to waive, and on this basis refused to compel the requested discovery.

Biomet did not appeal this ruling, which achieved Biomet's purpose of avoiding the requested discovery. Rather, American Standard is in the curious position of arguing on appeal that Biomet's legal opinion was indeed privileged, that the privilege was waived, and thus that the requested discovery should be compelled.

Of course, only the holder of the privilege can assert it. However, the issue was not decided on that basis. Instead, the majority herein agrees with the district court that the patent validity opinion was never privileged. This ruling negates decades of hard won precedent, and is a giant step backward into uncertainty, confusion, and prejudice.

### A

The Biomet validity opinion, like most patent validity opinions, describes the attorney's review of "prior art" published patents and scientific articles. All patent validity opinions applying the laws of anticipation and obviousness of 35 U.S.C. §§ 102 and 103 evaluate validity in view of "prior art" published knowledge. Published knowledge is, by definition, not confidential. It is of public record. Yet the majority holds that the Biomet opinion is not privileged because it relies on prior art that is found in public records and is not confidential.

The majority explains:

The district court said the opinion letter was not a privileged communication because it relied on *nonconfidential* information and stated the source of that information. Contrary to American Standard's assertion, it did *not* say the opinion letter was not privileged merely because it relied on publicly available information. It clearly said the letter relied on *nonconfidential information* gleaned from public records. American Standard simply ignores the finding of nonconfidentiality and focuses alone on

its source. Indeed, a mere reading of the above-described opinion "letter" demonstrates its nonconfidential nature. [emphasis in original]

Although the majority protests that it is not deciding for all fact situations, in the typical fact situation before us the majority negates the privilege of patent validity opinions based on prior art.

The prevailing view, until today, was that patent validity opinions based on prior art were legal opinions, subject to the attorney-client privilege as any legal opinion. That privilege could be claimed or waived by the client, as for any legal opinion. But if not waived, voluntarily or involuntarily, the privilege could be asserted.

The majority denies any intent to revive that aspect of *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 359, 85 U.S.P.Q. 5, 6 (D.Mass.1950), which held that "there is no privilege for so much of a lawyer's letter, report or opinion as relates to facts as gleaned from ... a public document such as a patent". That and various other aspects of *United Shoe* relating to patents have long been distinguished or overruled. *See, e.g., Sperry v. Florida,* 373 U.S. 379, 383, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963) (advising clients as to the patentability of inventions under statutory criteria constitutes the practice of law); *Ledex, Inc. v. United States,* 172 U.S.P.Q. 538, 539–40 (Ct.Cl.1972) (noting that trend away from *United Shoe* began with *Sperry,* and holding that documents relating to attorney-client communications while application was pending before the Patent Office were privileged); *Knogo Corp. v. United States,* 213 U.S.P.Q. 936, 942 (Ct.Cl.Tr.Div.1980) ("There is no longer any question" that opinions of the attorney on patentability and scope of patent claims "are legal opinions."); *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136, 143, 196 U.S.P.Q. 401, 405 (D.Del.1977) (refusing to "resuscitate the question of the applicability of attorney-client and work product protection to patent matters"). The majority's affirmation of the district court's holding that there is no privilege in a lawyer's opinion that "relies on non-confidential in-

formation gleaned from public ... documents", wording reminiscent of *United Shoe*, is blatantly contrary to this precedent.

The weight of modern authority is reflected in *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 390, 202 U.S.P.Q. 134, 143 (D.D.C.1978), where the court wrote:

> If an attorney-client communication could be discovered if it contained information known to others, then it would be the rare communication that would be protected and, in turn, it would be the rare client who would freely communicate to an attorney.

In *Nestle Co. v. A. Cherney and Sons, Inc.*, 207 U.S.P.Q. 930, 933 (D.Md.1980), the court considered the privilege of "information obtained through searches of public records, such as materials on file at the Patent and Trademark Office" stating:

> [The best approach of prior cases] imply that a document does not fall outside the attorney-client privilege merely because it contains technical or publicly-obtained information. If the party invoking the privilege can show that the document has some legal significance, then the document may be immune from discovery. [citation omitted] More specifically, the *communication* of the publicly obtained information "should be privileged to the extent that the communication was treated as confidential by the client and would tend to reveal a confidential communication of the client." *In re Ampicillin Antitrust Litigation*, 81 F.R.D. at 389, 202 USPQ at 142. [emphasis in original]

In *EZ Loader Boat Trailers, Inc. v. Shoreline Trailer Sales, Inc.*, 207 U.S.P.Q. 1002, 1003 (N.D.Tex.1979), the court stated:

> The opinion of a patent attorney deduced from a search of trademark registrations and patents is indistinguishable from legal advice sought in any other confidential relationship between an attorney and his client. This opinion is a communication to the client made in confidence and relating to the matter on which legal advice is sought.

The majority, attempting to explain its aberration from the prevailing view, states that "a mere reading of the opinion 'letter' ... demonstrates its nonconfidential nature". The challenged "letter" is headed on the first page "OPINION". It first identifies the prior art on which the attorney bases his conclusion of invalidity, as follows:

> The prior art to be considered is: (1) Davila, "The Development of Artificial Heart Valves", Special Technical Publication No. 386, American Society for Testing and Materials (1965); (2) Wright U.S. Patent 448,745 (1891); and (3) Smith, "Ceramic-Plastic Material as a Bone Substitute", *Archives of Surgery, 87*, 653–661 (1963) and U.S. Patent No. 3,314,420.

Under the heading "Conclusion" the attorney states:

> Hahn U.S. Patent 3,605,123 is invalid under 35 U.S.C. § 103 as obvious from Davila, alone or in combination with Wright and Smith.

In the "Analysis" section the attorney discusses various published documents, states his view as to what was known at the time the invention in the Hahn ('123) patent was made, and explains the basis for his conclusion of invalidity. An extensive extract illustrates the content:

> It was well known prior to Hahn that making an implant of a porous material, or adding a porous surface to the implant, would foster the growth of bone and other tissues into the pores.
>
> Spongy implants are disclosed in a number of publications. Bone ingrowth into polyvinyl sponge is described by Struthers et al, *Plastic and Reconstructive Surgery, 15*, 274 (1955); in a bone substitute, by Gilmer et al, *Surgery, Gynecology, and Obstetrics, 113*, 143 (1961); and in Teflon sponge, by Friedenberg et al, *Surgery, Gynecology, and Obstetrics*, May 1963, 588–592.
>
> Jardon U.S. Patent 2,688,139 (September 7, 1954) discloses an artificial eye which is porous throughout to foster tissue growth into the pores of the prosthesis.

Smith, "Ceramic-Plastic Material as a Bone Substitute," *Archives of Surgery*, *87*, 653–661 (1963), and U.S. Patent 3,314,420 (April 18, 1967), filled a porous ceramic prosthesis with an epoxy resin, then washed the prosthesis with methylene chloride to leach away the superficial resin to a depth of 50 to 70 mils, leaving a porous surface into which fibrous tissue and bone were said to grow.

\* \* \* \* \* \*

Thus, Smith appreciated the problem of mechanical weakness in an all-ceramic implant, a problem of major importance in a load-bearing implant such as a hip prosthesis.

The need for strength led naturally and inevitably to metallic-core prostheses of various types. Hirschhorn and Reynolds, in a paper presented orally in October 1968 at a symposium of the Metallurgical Section of the AIME, substituted powdered Vitallium, a cobalt alloy used by Hahn, for the ceramic of Smith, and acknowledged the weakness problem associated with the use of porous materials. Hulbert et al, in a paper presented at the same symposium, described a solid metal implant coated with a porous ceramic material to facilitate tissue ingrowth. While it is deemed unlikely that either of these papers is early enough to serve as a reference against Hahn, they show the direction of the art as suggested by the following two references, which *are* available.

As early as 1891, Wright disclosed, in U.S. Patent 448,745, an artificial tooth made of solid gold or platinum with a surface coating of porous, unglazed porcelain. Wright explicitly taught that the metallic core was used to give strength to the prosthesis, and the porous surface to allow....

\* \* \* \* \* \*

Thus, by the time of Hahn, the concept of a metal-core prosthesis with a spray-coated outer layer of the same metal to allow tissue ingrowth was old and well known. The Hahn device was therefore

obvious and unpatentable under 35 U.S.C. § 103.

One question remains: whether Wright and Davila represent analogous art, properly applicable to Hahn. Two publications and a symposium contemporaneous with Hahn clearly show that they are:

Klawitter ("A Basic Investigation of Bone Growth into a Porous Ceramic Material," Ph.D. Thesis, Clemson University, 1970)....

\* \* \* \* \* \*

Nevertheless, Klawitter is evidence that it was common practice at the time of Hahn to adopt materials developed for other purposes, and an obvious place to look would be.... [emphasis in original]

The opinion so continues, for a total of six pages.

This is a typical, classical, legal opinion of patent invalidity applying the law of 35 U.S.C. § 103. The opinion states the conclusion of law and the reasoning on which it was based. Its substance is attorney analysis and evaluation of published prior art, the standard source of section 103 invalidity. It is a standard communication of legal advice, from attorney to client. The district court's and the majority's view that it is not subject to the attorney-client privilege contravenes the heavy weight of authority, and belies the content of the opinion.

### B

This legal opinion thus is subject to a claim of attorney-client privilege unless the privilege has been waived, voluntarily or involuntarily.

American Standard argues that the privilege was waived when Biomet gave a copy to DePuy. The question of waiver was not decided by the district court, although the court raised the issue, without resolution, during argument before it. Biomet had also argued before the district court that waiver was avoided by the "common defense" rule[1]. This issue was not decided

---

1. In *Stix Products, Inc. v. United Merchants &* *Manufacturers, Inc.,* 47 F.R.D. 334, 338, 162 U.S.

by the district court and is not pressed before us. Nor does Biomet pursue the argument that even if the opinion were subject to a waived attorney-client privilege, its attorney had not waived his work product immunity.[2]

Thus although the district court's denial of the requested discovery of Biomet's counsel may or may not have been the correct result, it can not have been correct on the reasoning upheld by the majority. The issue of waiver requires review, in the first instance by the district court, on the proper standard.

P.Q. 508, 511 (S.D.N.Y.1969), wherein a non-party shared a validity opinion in confidence with a party to the suit, the *Stix* court held that because there was a community of interest in demonstrating the invalidity of the patent, the sharing of the opinion did not constitute waiver of the work product immunity of the attorney who prepared the opinion.

2. See *United States v. American Telephone and Telegraph Co.*, 642 F.2d 1285, 1299 (D.C.Cir. 1980) in which the court states:

[W]hile the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege.

See also *Hickman v. Taylor*, 329 U.S. 495, 510–514, 67 S.Ct. 385, 393–395, 91 L.Ed. 451 (1947).