**CRANE PLASTICS COMPANY,
et al., Plaintiffs,**

v.

**LOUISIANA–PACIFIC
CORPORATION,
Defendant.**

**No. C2–00–650.**

United States District Court,
S.D. Ohio,
Eastern Division.

Oct. 19, 2000.

---

Jeffrey S. Standley, Standley & Gilcrest, Dublin, OH, for Plaintiffs.

Shawn J. Organ, Jones, Day, Reavis & Pogue, Columbus, OH, Robert P. Ducatman, Jones, Day, Reavis & Pogue, Cleveland, OH, Thomas R. Goots, Robert L. Canala, Jones, Day, Reavis & Pogue, Columbus, OH, for Defendant.

## OPINION AND ORDER

KEMP, United States Magistrate Judge.

This case was filed by two plaintiffs, Crane Plastics Company and TimberTech Limited, seeking a declaration that a decking product which they manufacture and sell does not infringe a patent owned by defendant, Louisiana–Pacific Corporation. That patent, which was issued in 1993 and which is designated as Patent No. 5,182,-892, is entitled "Tongue and Groove Board Product." The matter is currently before the Court for a ruling on competing motions for a protective order (filed by plaintiffs) and to compel discovery (filed by defendants). Some of the issues raised in those motions, concerning responses to contention interrogatories and production of customer lists, were resolved at the preliminary pretrial conference held on October 10, 2000. The primary subject of this Opinion and Order is Louisiana–Pacific's request for specific information concerning the composition of the allegedly infringing product and the process through which it is manufactured. For the following reasons, each motion will be granted in part and denied in part.

### I.

Plaintiffs assert that the specific composition of their decking product, which is apparently a combination of wood and plastic, and the specific way in which they manufacture that product are not relevant to Louisiana–Pacific's claim of patent infringement. In order to evaluate that claim, it is necessary to describe in some detail the subject matter of Louisiana–Pacific's patent.

According to the background section of the patent, a problem has arisen, primarily in the construction industry, with the accumulation of water on sub-flooring. Tongue and groove boards have been frequently used for sub-flooring, and apparently because of the exact fit of a standard tongue and groove flooring assembly, water which accumulates on the surface of the floor either as a result of rain or snow before construction has been completed tends to stay there, causing difficulties with the subsequent installation of carpet, tile, or hardwood flooring on top of the sub-floor. The patent describes a method for designing and assembling tongue and groove flooring so that water drains through it.

As the patent states in the abstract, "the major design feature of this invention is that the protruding tongue [the tongue of one flooring section that fits into the grove of the adjacent section] has at least one substantially vertically-extending opening formed therein." In the preferred design, that opening is a notch which allows "water to drain by gravity ... through [the] vertically-extending opening." The patent is not limited to flooring with a notched tongue, however, and covers any method of assembling a flooring system which permits water to drain by gravity through channels built into the floor assembly. The patent includes a process for manufacturing a section of tongue-and-groove flooring in which the tongue is notched by a machine after the floor board is cut. Claim Three of the patent covers wood or composite wood products, and Claim Four includes coverage for plywood, particle board, wafer board and strand board.

According to letters attached to the complaint written on behalf of Louisiana–Pacific to advise plaintiffs that they were infringing the patent, plaintiffs manufacture "a decking plank product ... which includes drain holes on the tongue of each plank." Plaintiffs were asked to cease and desist the manufacture and sale of "any

tongue and groove board products that include a protruding tongue that has at least one substantially-vertically extending opening formed therein." Plaintiffs appear to admit that they manufacture a wood and plastic tongue and groove deck system, and they assert at least two bases for claiming non-infringement: (1) that the patent is limited to sub-flooring, a product designed primarily for interior use, whereas the plaintiffs' system is designed for use in outdoor decks; and (2) that the patent covers only wood or composite wood products, and specifically plywood, particle board, wafer board and strand board, whereas the plaintiffs' product is a plastic-based product.

## II.

It is clear from the nature of the patent and the issues raised by the pleadings that Louisiana–Pacific is entitled to discover a significant amount of information about plaintiffs' product. The most obvious category of such information relates to the major subject of the patent, which, as the Court views it, is the assembly of a tongue and grove flooring system which permits water to drain through the system. There are at least two major components to the assembly: the configuration of each individual floor board, and the way in which the individual boards fit together to create a flooring system. Additionally, because of the process claim of the patent, if the plaintiffs' individual floor boards contain a notched tongue component, Louisiana–Pacific will need to know exactly how that feature is introduced into the floor board during the manufacturing process. Finally, because the patent appears to specify that it covers flooring systems made only of specific materials, and because plaintiffs contend that their flooring system is not covered by the patent because it is not composed of such materials, Louisiana–Pacific is entitled to discovery sufficient to permit it to determine whether the plaintiffs' wood-and-plastic flooring material falls within the accepted description of "composite wood" or "plywood, particle board, wafer board and strand board," or

is the functional equivalent of a product made from those materials.

Plaintiffs do not seriously dispute Louisiana–Pacific's entitlement to discovery on these issues. Rather, they contend that they have already provided Louisiana–Pacific with sufficient information on these issues, and that additional information is either irrelevant or goes to the very heart of plaintiffs' trade secrets and is of such marginal relevance that the harm to plaintiffs would outweigh any benefit to Louisiana–Pacific from disclosure of this information.

Courts have developed a standard model for analyzing a party's claim that confidential information should not be produced during the course of discovery. First, the burden is on the resisting party to show that the information is confidential. Second, the Court must determine whether any harm would result to the resisting party if the information were released and whether a protective order would be sufficient to guard against that injury. Third, if it has been shown both that the requested information is confidential and that potential injury would result from the production of that information, the burden shifts to the requesting party "to establish that the information is both relevant and necessary to the pending action." *See Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 525 (W.D.Tenn. 1999). Although the *Allen* case involved discovery requested from a non-party, the method of analysis relating to discovery from a party is not significantly different. Rather, the only difference is that the Court assigns greater weight to the confidentiality interests asserted by a non-party to the litigation and requires the requesting party to make a heightened showing of relevance and necessity before such information will be ordered to be disclosed.

In ruling on the pending motions, the Court will make certain assumptions about confidentiality and injury because the parties do not appear to take different posi-

tions on these issues. First, the Court assumes that the processes through which the plaintiffs extrude the particular product in question and the formula for making the specific product are both confidential and would qualify for trade secret protection. Second, the Court assumes that disclosure of that information to Louisiana–Pacific without some type of restriction on its use would be harmful to plaintiffs. Plaintiffs have asserted that Louisiana–Pacific expressed an interest in purchasing their deck-manufacturing operation and has also made public statements concerning its desire to enter that business. It is generally presumed that the disclosure of a secret formula or manufacturing processes to a competitor is harmful. *See American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 740 (Fed.Cir.1987). The parties in this case have entered into a protective order, and at the pretrial conference counsel for Louisiana–Pacific indicated a willingness to consider the requested information to be subject to an "attorneys eyes only" inspection, at least in the first instance. Such restriction on the use or disclosure of confidential information ordinarily addresses most of the concerns about the production of such information to a competitor. Even with such protection in place, however, the question remains whether the potential for injury to the plaintiffs from producing the requested information, even subject to strict prohibitions against its use and disclosure, are outweighed by the relevance of the information and Louisiana–Pacific's need for it in addressing the patent infringement issues raised by the pleadings.

■ On the state of this record, it is impossible for the Court to determine whether Louisiana–Pacific has made the requisite showings of relevance and necessity. Plaintiffs assert that they have provided Louisiana–Pacific with engineering drawings from which the precise configuration of each segment of their decking system can be determined. They also claim to have provided information indicating how the system fits together, which would presumably indicate whether the

system includes drain holes and, if so, where those drain holes are located and whether they are vertically oriented. The Court agrees that little additional information should be necessary in order to determine whether the general claims of the patent are infringed by plaintiffs' system— that is, whether the tongue portion of each floor board is notched or has incorporated some other means to permit water to flow by gravity from the upper to the lower surface of the flooring system, and whether the system, operating as a whole, permits water to flow through it either through vertically-extending notches or through some other configuration described in the patent, such as channels created through the use of an imprecise fit between the tongue of one section and the groove of the adjacent section.

As noted above, however, the patent also contains a process claim which describes the way in which a particular piece of flooring is conveyed from one manufacturing operation to the next and which ultimately results in notches being cut in the tongue section of the floor board. It is unclear whether the engineering drawings provided describe exactly how plaintiffs accomplish the manufacture of the tongue section of their product, if, in fact, the manufacturing process produces a product that either has notches in the tongue section or has drainage holes. There is clearly a need for this type of information. Otherwise, Louisiana–Pacific cannot fairly evaluate whether the process claim in the patent is being infringed.

Ordinarily, it would appear that little in the way of confidential information would be revealed if plaintiffs were to produce information about the way in which each section of flooring is finally configured. The patent describes a process whereby each tongue and groove board is moved along rollers to a different area where cutting blades produce the final configuration. Because plaintiffs' product is a plastic and wood combination, however, it cannot be determined from this record

whether it reaches its final configuration through a similar process, or whether it is placed in a mold or otherwise processed into its final shape without undergoing the type of cutting operation described in the patent. If the latter is the case, it still should be possible for plaintiffs to produce information about the process which does not reveal any trade secret information. If there is some step in the process which is particularly sensitive, it may well be that plaintiffs could produce a general description of the process, or even a specific description of each step, but still omit the part which is a trade secret, so long as that is not the crucial part of the operation which permits it to be compared to the manufacturing process described in the patent. If, after such production occurs, there is any information withheld which, in Louisiana–Pacific's view, is crucial to that determination, the Court would be willing to conduct an *in camera* review or otherwise determine the issue on the basis of specific facts rather than general assertions.

Much the same can be said with respect to whether Louisiana–Pacific has demonstrated the relevancy and necessity of knowing the exact composition of plaintiffs' product. Plaintiffs have explained that the product is made of a combination of plastic and wood, but assert that the precise composition, including the quantities of each separate material and the process by which those materials are blended to form the product, is highly confidential. Without some understanding of whether the words used in the patent to describe building products, such as "composite wood," have a generally understood meaning within the manufacturing and construction industry, the Court cannot determine whether Louisiana–Pacific needs more information. It may well be that all of the products described in the patent are composed primarily, if not exclusively, of wood or wood plus adhesives, and that a product with a significant percentage of plastic simply cannot be described as "composite wood" even if it has a wood component. On the other hand, the term "composite wood" may have different meanings, so that it may well include products which have some percentage of plastic. Plaintiffs have apparently produced general information about the percentage of wood and plastic in their product. Is there a definition of "composite wood" that depends not only upon the percentage of each component of a particular item, but also requires one to know the precise way in which those components are blended together in order to create that product? The Court simply cannot tell. Further, it may be that, if Louisiana–Pacific's main argument is based upon the doctrine of equivalents, so long as it can demonstrate that wood/plastic flooring performs essentially the same function as flooring made out of any of the materials described in the patent, it would be unnecessary to determine the precise composition of plaintiffs' products. Again, without knowing precisely what information plaintiffs have produced, what the general understanding is of the terms used in the patent, and how, if at all, additional information about the precise composition of plaintiffs' products would assist Louisiana–Pacific in proving its claims or disproving plaintiffs' claims, it is impossible to determine whether Louisiana–Pacific has met its burden of demonstrating relevancy or whether it has made a showing of relevance sufficient to overcome the potential for injury to plaintiffs. Once those issues have been more fully developed, the Court would be willing, particularly in the context of a more specific dispute, to determine whether such information is subject to being produced under a restrictive protective order.

### III.

The only other information specifically addressed by the motion deals with various categories of marketing information. Louisiana–Pacific argues that information about plaintiffs' customers is reasonably calculated to lead to the discovery of relevant information, including the way in which the product has been advertised

to customers and the way in which customers have actually installed and used the product. The Court agrees, and has already ordered plaintiffs to produce customer lists. Additionally, marketing materials presumably are not confidential (at least those which are distributed to customers) and, because they may well contain information concerning the construction and performance of plaintiffs' decking system, should be produced. On the other hand, the Court does not see the relevance of plaintiffs' marketing plans or strategies, at least at this point in the litigation. Again, disclosure of plaintiffs' internal marketing strategies presumably encroaches upon confidential information, some of which may well have been developed at significant cost based upon marketing surveys, and which would be subject to detrimental use in the hands of a competitor. Even as to damages, Louisiana–Pacific would legitimately be entitled to information concerning sales of the decking system, but not plans or business strategies which have not yet come to fruition. Consequently, to the extent that any documents in plaintiffs' possession which are used in connection with the advertising or sale of the products reveal anything about product performance, structure, or manufacture, those should be produced, if they have not already been, but any internal marketing plans or strategies need not be produced at this stage of the case.

### IV.

Based upon the foregoing, plaintiffs' motion for a protective order and defendant's motion to compel are each granted in part and denied in part as described above. If there is additional information in plaintiffs' possession which is required to be produced by the terms of this order, it shall be produced within 15 days. Otherwise, additional production of information, particularly that which plaintiffs regard as the most competitively sensitive concerning their manufacturing processes, need not be produced unless it becomes apparent that the information which plaintiffs have already produced, and will produce pursuant

to this order, is insufficient to allow Louisiana–Pacific, and ultimately the Court, to determine whether plaintiffs manufacture and sell a product described in the patent or do so through use of a process described in the patent, or the equivalent of either.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed.R.Civ.P.; Eastern Division Order No. 91–3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.