Jack BEERY, Plaintiff,

v.

THOMSON CONSUMER ELECTRONICS, INC., Defendant.

Thomson Licensing SA, Plaintiff,

v.

Jack Beery, Defendant.

Nos. 3:00 CV 327, 3:02 CV 311.

United States District Court, S.D. Ohio, Western Division at Dayton.

Oct. 1, 2003.

Raymond P. Niro, Arthur A. Gasey, William W. Flachsbart, Niro, Scavone, Haller & Niro, Chicago, IL, David A. Shough, Dinsmore & Shohl LLP, Dayton, OH, for IP Innovation and Technology Licensing Corp.

Thomas R. Kraemer, Faruki Ireland & Cox, PLL, Dayton, OH, Arland Stein, Deborah Pollack–Milgate, Barnes & Thornburg, Indianapolis, IN, for Thomson Consumer Electronics, Inc.

## ORDER

OVINGTON, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Jack Beery alleges that Thomson Consumer Electronics, Inc. infringed and/or

willfully infringed his patent for a "Television Receiver Having Memory Control For Tune-By–Label Feature," United States Patent Reissue No. 35, 952 (hereinafter "the '952 patent"). The (Doc. #1 at 2). Thomson asserts that its products do not infringe the '952 patent either literally or under the doctrine of equivalents, and that the '952 patent is invalid under the doctrines of anticipation, obviousness, and indefiniteness. (Doc. #7).

This case, now a consolidated case, is nearing the end of the patent claim-construction phase. A *Markman* [1] hearing is scheduled on October 7, 2003.

The case is presently before the Court upon Thomson's Motion to Compel Infringement Opinions of Counsel (Doc. #158), Thomson's Reply (Doc. #180), Beery's Response and Cross Motion for Protective Order (Doc. #185), and the record as a whole.

## II. BACKGROUND

### A. *Thomson's Motion to Compel and Boshinski's Deposition*

Thomson seeks an Order compelling two things: (1) Beery to produce certain documents listed in his patent attorney's, Thomas Boshinski, Esq.'s, privilege log and (2) Boshinski to testify about these documents after they have been produced. Boshinski is not Beery's trial counsel in the instant case, and he is not a party to this case.

Boshinski acknowledged during his deposition that he provided Beery with written patent infringement advice regarding Thomson's products but could not recall the factual bases of the written infringement opinions he provided to Beery. Boshinski's privilege log reveals that he provided legal advice regarding "patent infringement" in May 2000, shortly before Beery filed this patent infringement case against Thomson and that Boshinski has continued to provide legal advice regarding patent infringement and claim

construction as late as March 2003. (Doc. #158 at 4–5 and Exhibit B).

### B. *The Court's Order of February 18, 2003*

On February 18, 2003, prior to Boshinski's deposition, this Court granted Thomson's Motion to Compel further deposition testimony by Plaintiff Beery because during his initial deposition, Beery did not adequately answer questions regarding his understanding of specific claim language. Although Beery contended that he had answered these questions to the best of his ability given his lack of legal training or experience, *see* Doc. 125 at 6, his answers improperly failed to state *his* understanding of the claim language at issue.

In reaching this conclusion, the Court explained that an inventor, like Berry, " 'may reasonably be expected to be able to testify from an intimate association with the subject matter of the case and in many cases may very well be the person most qualified to testify as to the invention and as to its contribution to the area of knowledge involved in the art.' " (Doc. #125 at 7 quoting *Baxter Interntl. Inc. v. Cobe Lab, Inc.*, 794 F.Supp. 252, 254 (N.D.Ill.1991)). The Court further explained that an inventor is competent to testify about his understanding of key phrases in the patent claim and that an inventor cannot claim that his understanding is protected by privilege or as work product. (Doc. #125 at 6 quoting *CellNet Data Systems Inc. v. Itron, Inc.*, 178 F.R.D. 529, 533–34 (N.D.Cal.1998)).

The Order further stated:

If Beery does not understand the meaning of certain words or phrases in the claim language, then his answer should simply state (and perhaps attempt to explain) this. It was, however, improper for Beery to refuse to answer on the ground that he needed to study the patent claim language and talk to his attorney before he could answer. This reason for answering

1. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

showed Beery's desire to frame an answer in the manner best suited to his case. This directly conflicts with the fact-finding function of deposition[s], which focuses on what the witness knows, not on what the witness's attorney can do 'to mold a legally convenient record.' *Hall,* 150 F.R.D. at 529.[2] The deposition questions asked Beery to state his understanding of specific claim language at the time of his deposition. *As the inventor, he doubtlessly had some understanding of at least some of the patent claim language, and this is what he must testify about during his deposition.*

(Doc. # 125 at 7 (emphasis added)).

On May 21 and 22, 2003, Thomson conducted Beery's continued deposition. (Doc. # 158, Exh. C).

### C. Beery's Continued Deposition

#### 1.

#### The Deposition Notebook

During his continued deposition, Beery relied on a three-ring deposition notebook, which he brought to his continued deposition apparently without first producing a copy of it to Thomson. (Doc. # 158, Exh. A).[3] At times during his deposition, Beery referred to the glossary when discussing his understanding of claim language. For example, Beery testified as follows:

[Beery]. Because we're coming to the end of the day and I misused words today and I want to correct them. And that channel-select designation is used to identify a channel-tuning designation, and a channel-tuning designation is equivalent to a channel code; and anywhere that I said different than that, I want to ... clarify that now.

Q. In other words, your referring to your—

\* \* \* \* \* \*

Q. you're referring to your glossary of terms that was prepared?

[Beery]. Yeah.

Q. That's in your ... book that you produced this morning?

[Beery]. Yes....

Q. Okay. Now, can you tell me—give me a definition of channel-select designation without looking at your glossary of terms?

[Beery]. Are you asking me to take a memory test?

Q. No, I'm asking you can you tell me from your patents. I mean, they're your patents.

[Beery]. And I've got them right here. Why shouldn't I use this list that I worked hard on to get all my data right—why shouldn't I use it to give you answers to these questions.?

Q. So, the answer is that you—you can't without looking at your—your glossary of terms; is that right?

[Beery]. I think the answer is I don't want to without looking to my glossary of terms.

(Doc. # 158, Exh. C at 650–52).

In his opposition to Thomson's Motion to Compel, Beery describes the notebook as including a glossary of eighty-three words or phrases that appear in the '952 patent. The notebook references where each word or phrase references appears in the '952 patent specification, the claim in which it appears, the page number of the Interrogatory Response referring to the term or phrase, and any pertinent page of Beery's prior deposition testimony. (Doc. # 185 at 7). Beery, hinting at exasperation, states, "It is plainly impossible for any human to remember all of this for even one entry, much less eighty similar entries." (Doc. # 185 at 8).

Beery maintains that he did much of the work preparing the deposition notebook, al-

---

**2.** *Hall v. Clifton Precision,* 150 F.R.D. 525 (E.D.Pa.1993).

**3.** It is unclear whether Exhibit C is a copy of the actual glossary Beery brought to his continued deposition because Exhibit C contains a handwritten notation stating, "draft from Joe Hosteny to Jack Beery."

though he acknowledges he was assisted by his attorneys and their staff. (Doc. # 185 at 7).

Thomson contends that the glossary was largely prepared by Beery's counsel. (Doc. 158, Memo. at 1–2, 4).

### 2.

### *Beery's Reliance on his Attorneys and on Interrogatory Responses*

During his continued deposition, when asked about his understanding of the differences between certain accused products, like Thomson's Guide Plus+, Beery testified that he consulted his attorneys. For example, Beery testified as follows:

Q. How do you understand the GUIDE Plus+ system works?

[Beery] I had an expert, I had attorneys to review the GUIDE Plus+ and conclude that the GUIDE Plus+ infringed the product....

(Doc. # 158, Exh. C at 641–42). Beery also based his deposition answers on his supplemental responses to Thomson's Interrogatories, as exemplified in the following:

Q. Okay. So could you tell me, the, without use of the word conversion why you think that there's an infringement in GUIDE Plus+?

[Beery] .... I think that there's an infringement in GUIDE Plus+ because of the third supplement that gave, as I said before, pages of—of claims and how they were infringed by GUIDE Plus+.

Q. Well, I'm not asking you to just refer to the interrogatory answers. I'm asking you a question.... and you obviously had a basis for—for your bringing this claim—on GUIDE Plus+ against ... Thomson, and what I'm asking you to please tell me what is the basis for that claim other ... than by reference to these interrogatories. Can't you tell me.

[Beery] Yes.

Q. Well, what—

\* \* \* \* \* \*

[Beery] —the information in the third supplement.

Q. Okay. So you're not able to articulate ... the reason for the infringement for GUIDE Plus+ other than by just referring to the answers to interrogatories?

[Beery] I believe that this two-plus year-old document is the best answer. I frankly didn't ... infringement hasn't been talked about for, obviously, two years.... I just didn't anticipate a question like that, and I have not studied it. But ... I'm very careful not to ever have said that a product has infringed my patent without a legal counsel agreeing and saying yes—looking at the product and saying yes, that infringed it. So I have never in my whole life gone out on ... my own and [said] you have infringed my product. So ... what I have here is the people that are the smartest and know the subject the best providing support for my claim, and—in pages, and in a two year-old document....

\* \* \* \* \* \*

Q. [W]ho are these people you're referring to?

[Beery] Well, there's an expert and the attorneys.

(Doc. # 158, Exh. C at 678–80).

In his opposition to Thomson's Motion to Compel, Beery explains that his Interrogatory Responses provide his best answers because the issues related to the patents in this case span many years. His invention was made in 1988. He filed his first patent in mid–1989, fourteen years before his continued deposition. He filed his second patent in mid–1990. A reissue proceeding related to the second patent began in 1993 and concluded in 1998, five years before Beery's continued deposition in May 2003. (Doc. # 185 at 8).

### III. THE PARTIES' CONTENTIONS

Thomson contends that Beery has waived his attorney-client privilege and the work-product doctrine with regard to the infringe-

ment advice he obtained from his attorneys. Thomson maintains that Beery's waiver occurred when he affirmatively injected his attorney's advice into this case during his continued deposition by relying on it to explain the basis for his contention that Thomson's products infringe the '952 patent, by referring to the glossary contained in a notebook prepared in large part by his attorneys, and by referring to his supplemental Interrogatory Responses. Thomson therefore seeks an Order compelling Beery to "produce documents stating the basis for his infringement claim against Thomson's products, and his patent claim interpretation underlying his infringement claim." (Doc. # 158, Memo. at 6).

Beery contends that he has not waived the attorney-client privilege, because—at most—he relied on the advice of his trial attorneys in filing his Complaint and on their assistance in drafting his responses to Thomson's Interrogatories Responses. Beery argues, "relying on upon an attorney to draft a complaint or a discovery response is not the same as disclosure of the privileged opinion letter." (Doc. # 185 at 3). Beery represents to the Court and to Thomson's counsel that he will not rely on any opinion—whether from Boshinski or any other lawyer—at summary judgment or during the trial of this case. (Doc. # 185 at 4). Berry thus maintains that since he has not chosen to inject any attorney opinions into the case, he has not waived his attorney-client privilege. *Id.*

## IV.  ANALYSIS

### A.  *The Attorney–Client Privilege*

■ "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Genentech, Inc. v. United States Intern. Trade Com'n,* 122 F.3d 1409, 1415 (Fed.Cir.1997). It "is one of the oldest recognized privileges for confidential communications." *Swidler &*

*Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy depends upon the lawyer[ ] being fully informed by the client." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

Tugging against the application of each judicially recognized privilege—including the attorney-client privilege—is the potential harm to justice when known facts are excluded from the truth-finding process.[4] *See United States v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). "Testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public ... has the right to every man's evidence.'" *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (citation omitted).

### B.  *The Attorney–Client Privilege and Waiver in Patent Cases*

■ The attorney-client privilege generally applies in patent cases and may shield communications between a client and its attorney concerning the client's invention. *See In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 805–06 (Fed.Cir.2000); *cf. Sperry v. Florida,* 373 U.S. 379, 382, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963)("the preparation and prosecution of patent applications for others constitutes the practice of law.").

■ The privilege applies in patent cases "to lawyer-to-client communications that reveal, directly or indirectly, the substance of a confidential communication by the client." *American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 745 (Fed.Cir.1987). The mere existence of an attorney-client relationship, however, does not transform every attorney-

---

**4.** Even "[t]he President, for example, does not have an absolute privilege against disclosure of materials subpoenaed for a judicial proceeding."

*Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979)(citing *Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039).

client communication into a privileged one. *See, e.g., American Standard,* 828 F.2d at 744–45; *In re Minebea Co., Ltd.,* 143 F.R.D. 494, 503 (S.D.N.Y.1992). The circumstances of the communication control whether the privilege applies. *Spalding Sports,* 203 F.3d at 805; *see American Standard,* 828 F.2d at 745.

■ "[T]he central inquiry is whether the communication · is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." *Spalding Sports,* 203 F.3d at 805 (citing *Genentech,* 122 F.3d at 1415 (citing *American Standard,* 828 F.2d at 745)).

■ "[A] party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation." *Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.,* 32 F.3d 851, 863 (3rd Cir.1994). An attorney-client communication is placed at issue "when the party makes an assertion 'that in fairness requires examination of protected communications.'" *In re Buspirone Antitrust Litigation,* 208 F.R.D. 516, 520 (S.D.N.Y.2002)(quoting *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2nd Cir.1991)(other citations omitted)). This occurs when a party affirmatively uses privileged communications to defend against or attack the opposing party, *United States v. Ohio Edison Co.,* 2002 WL 1585597 at *5 (S.D.Ohio 2002)(Kemp, M.J.), such as when an accused infringer attempts to defeat a willful-infringement claim by pointing to his good-faith reliance on his attorney's advice that his products did not infringe, *see Rhone–Poulenc Rorer, Inc.,* 32 F.3d at 863; *see also Bausch & Lomb Inc. v. Alcon Laboratories, Inc.,* 173 F.R.D. 367, 370 (W.D.N.Y.1995). Waiver therefore stops a party from manipulating an essential component of our legal system—the attorney client privilege—"so as to release information favorable to it and withhold anything else." *Kelsey–Hayes Co. v. Motor Wheel Corp.,* 155 F.R.D. 170, 171 (W.D.Mich.1991).

■ "Once the attorney-client privilege has been waived, the privilege is generally lost for all purposes and in all forums." *Genentech, Inc.,* 122 F.3d at 1416.

### C. The Attorney Client Privilege Applies to the Infringement Opinions of Beery's Attorneys

#### 1.

### The Privilege

The entries in Beery's privilege log reveal that many of the documents at issue contain the legal opinions of Beery's attorneys, some concerning patent infringement. *See* Doc. # 158, Exh. B. Beery's deposition testimony reveals that he sought and relied on his attorneys' legal advice about patent infringement. For example, with regard to Thomson's product known as GUIDE Plus+, Beery testified, "I had attorneys to review the GUIDE Plus+ and conclude that the GUIDE Plus+ infringed the product...." *Supra,* pp. 5–6. In addition, the following explanation by Beery revealed his general reliance on advice of counsel regarding patent infringement:

> I'm very careful not to ever have said that a product has infringed my patent without a legal counsel agreeing and saying yes—looking at the product and saying yes, that infringed it. So I have never in my whole life gone out on ... my own and [said] you have infringed my product. So ... what I have here is the people that are the smartest and know the subject the best providing support for my claim, and—in pages, and in a two year-old document....

*Supra,* p. 6. Consequently, unless Beery's continued deposition testimony reveals that he has waived his privilege to these types of attorney-client communications, he is entitled to invoke the privilege to protect documents containing this information from discovery by Thomson. *See Genentech,* 122 F.3d at 1415; *see also American Standard,* 828 F.2d at 745.

#### 2.

### Unfairness

■ Although Thomson contends that Beery has placed his attorneys' opinions at

issue by relying on them during his deposition, Thomson has not shown that any unfairness in allowing Beery to rely on his advice of counsel on issues of infringement or claim construction must overwhelm the attorney client privilege. By seeking the advice of patent attorneys regarding infringement issues, Beery triggered the attorney client privilege because providing the legal advice he sought is perhaps the *raison d'être* of patent counsel—to analyze whether particular products infringe the patents of their clients. To the extent the privilege frustrated Thomson's attempts during Beery's continued deposition to learn about Beery's personal understanding of why his products infringed—particularly why Beery believes that certain terms or phrases in the '952 patent are embodied in Thomson's products—Thomson has not adequately explained why any unfairness in this justifies removing the privilege. The Court finds that this situation is not analogous to cases where a defendant waives the privilege by invoking it as a defense to a claim of willful infringement. In those cases, the substance of the attorney's advice either supports or defeats the defendant's assertion of good-faith. *See, e.g., Rhone–Poulenc Rorer, Inc.,* 32 F.3d at 863 (and cases cited therein); *Steelcase, Inc. v. Haworth, Inc.,* 954 F.Supp. 1195, 1198 (W.D.Mich.1997). In the instant case, Beery's reliance on his advice of counsel concerning issues of infringement and claim construction merely shows his lack of personal knowledge, a fact not likely to assist him in proving infringement or in supporting those issues of claim construction of which he lacks personal knowledge. His attorney's opinions, even if permitted into evidence through, for example, Beery's Supplemental Interrogatory Responses, have been known to Thomson from the date they were produced. Thomson has not shown that any unfairness in this is tantamount to the unfairness arising from a defendant's reliance on the substance of an attorney's advice as a good-faith defense to willful infringement.

Consequently, Beery's reliance on counsel regarding these issues does not justify an Order requiring him to reveal the substance of his communications with his attorneys.

This means that Thomson may turn to Beery's Interrogatory Responses, Beery's deposition notebook, and those portions of his deposition testimony (few as they appear to be) for information about his personal knowledge.[5] Thomson has not shown how any unfairness in this will prejudice its preparation for the *Markman* hearing or in presenting its contentions regarding claim construction or in presenting non-infringement at summary-judgment or trial. Beery, moreover, has represented to the Court and to opposing counsel that "he will not rely upon any opinion (whether from Mr. Boshinski or any other lawyer) at summary judgment or at trial in this case." (Doc. # 185 at 4). This prevents Beery from unfairly inserting these opinions into future substantive issues regarding claim construction or infringement.

Thomson contends, "It is unfair, inconsistent, and contrary to law for Mr. Beery to claim infringement on the one hand, while withholding as privileged the basis for that claim on the other. Contrary to the Court's direction in its Order of February 18, 2003, Mr. Beery could not or would not articulate in response to questions at his Court-ordered deposition the basis for his infringement claim and underlying patent claim construction." (Doc. # 158, Memo. at 7–8). The Court disagrees.

Beery has created some degree of unfairness and inconsistency by bringing an infringement claim against Thompson and to declining to provide his personal understanding of why Thompson has purportedly infringed. However, the attorney client privilege permits Beery to freely consult with his attorneys and to rely on their infringement advice without fear that the contents of these consultations will be discoverable during litigation. *See Zenith Radio Corp. v. United*

---

5. Both Beery and his attorneys prepared the deposition notebook. Although Beery spent much time in this endeavor, his attorneys doubt- . lessly had a large role in preparing the notebook. *E.g.,* Doc. # 158, Exh. C at 445–46.

*States,* 764 F.2d 1577, 1580 (Fed.Cir.1985) (party does not automatically waive attorney client privilege simply by bringing suit); *see also Ohio Edison Co.,* 2002 WL 1585597 at *6 (defendant did not waive attorney-client privilege simply by pleading certain defenses). In addition, Rule 11(b) of the Federal Rules of Civil Procedure required Beery, through his attorneys, to conduct a reasonable investigation into whether Thomson's products infringed the '952 patent prior to filing this case. To the extent this investigation encompassed communications between Beery and his attorneys about either why Thomson's products infringe the '952 patent or claim construction, the communications are privileged.

A review of Beery's continued deposition reveals why Thomson is frustrated with Beery's reliance on advice of counsel and his steadfast refusal to provide his personal understanding of why Thomson's products infringe. He testified, for example, as follows:

> Q. Now ... can you tell me in your words, not in your expert's words, not in your attorney's words, but in your words, why you consider that there is an infringement by GUIDE Plus+?
>
> [Beery] I consider there is an infringement by GUIDE Plus+ because of the work that was done in the third supplement (indicating).
>
> Q. My question, sir, is tell me in your words the substance—don't refer to—I know the interrogatories, sir. That's why I'm here. I'm trying to find out more information than what's in the interrogatories. What ... is your basis for your claim of infringement of GUIDE Plus+?
>
> \*     \*     \*     \*     \*     \*
>
> [Beery] I depend on the third supplement[6] to say that you are infringed. I really depend on it.

(Doc. # 158, Exh. C at 681–82). This is not only an example of Beery's reliance on his

attorneys' advice, through their role in preparing his Interrogatory Responses, it is also an example of Beery's personal lack of knowledge regarding specific reasons why Thompson's products (here, the GUIDE Plus+) infringe the '952 patent. There is nothing excessively unfair about the fact that Beery lacks personal knowledge regarding the reasons Thomson's products purportedly infringe the '952 patent. Similarly, as the Court's Order of February 18, 2003 explained, Beery remained free to claim personal ignorance of the meaning of claim language. *See* Doc. # 125 at 7. Contrary to Thomson's assertion, the Court Order of February 2003 did not require Beery to explain his personal understanding of the basis for his infringement cause of action against Thomson, or the meaning of claim language, when he lacks such personal understanding.

### 3.

### *Strategy*

The absence of unfairness or prejudice to Thomson also derives from the strategic nature of the parties' dispute over Beery's deposition testimony. What Thomson likely hopes to gain from Beery is his admission that certain language of the '952 patent claim must be narrowly construed and therefore limited in a manner that excludes Thomson's products. After all, if Thomson obtains an admission from Beery that effectively narrows a critical phrase in just one element of the '952 patent, then Thomson has taken a giant step towards prevailing on its assertion that its products do not infringe the '952 patent. *See Mas–Hamilton Group,* 156 F.3d at 1211 ("If even one limitation is missing or not met as claimed, there is not literal infringement.").

Beery likely seeks the opposite—a broad construction of claim language to more easily cover Thomson's products. This would be a step towards victory on Beery's infringement claim. It appears that to accomplish this,

---

**6.** The full context of this testimony reveals that Beery is referring to his Third Supplemental responses to Thomson's Interrogatories.

Beery defers to his attorneys, who in the calm of the office can avoid narrowing claim language, instead of providing his own understanding, which during the heat of a deposition may inadvertently narrow claim language.

The Court finds that any unfairness in this to Thomson is not prejudicial to its preparation for the *Markman* hearing, because it remains free to present its own contentions regarding claim construction secure in the knowledge of what Beery contends by way of his supplemental Interrogatory Responses, his glossary of terms, and his deposition testimony (limited as it is). The Court, moreover, will hold Beery to his representation that he will not present any opinions beyond what is reflected in his Interrogatory responses. (Doc. # 185 at 4).

### 4.

#### *Conclusion*

For all the above reasons, the Court concludes that Beery did not waive the attorney client privilege during his continued deposition, and Thomson's Motion to Compel therefore lacks merit.[7]

## V. BEERY'S MOTION FOR PROTECTIVE ORDER

Because the attorney client privilege bars Thomson from obtaining an Order requiring Beery to produce copies of the documents contained in its privilege log, Beery's Motion for a Protective Order is denied as moot.

**IT IS THEREFORE ORDERED THAT:**

1. Motion to Compel Infringement Opinions of Counsel (Doc. # 158) is DENIED; and

2. Beery's Cross Motion for Protective Order (Doc. # 185) is DENIED as moot.

---

7. This conclusion applies equally to Thomson's attempt to show that the work-product doctrine does not protect the documents in Beery's privilege log because, as Thomson states, "The analysis under the work product doctrine is the same." (Doc. # 158 at 8).