Slip Op. 04-79

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

|  |  |  |
|---|---|---|
| | : | |
| **UNITED STATES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Court No. 02-00646** |
| | : | |
| **OPTREX AMERICA, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## MEMORANDUM OPINION AND ORDER

Before the court is a Motion to Compel Discovery by Plaintiff United States Bureau of Customs and Border Protection[1] ("Customs" or "government") dated February 27, 2004, (see also the companion opinion and order issued in this case on Defendant's Motion to Compel Discovery). This case involves Defendant Optrex's alleged negligent misclassification of imported liquid crystal display ("LCD") panels and modules evidenced by entering incorrect HTSUS item numbers onto entry documents submitted to Customs.

Plaintiff desires: (1) to continue depositions of Ms. Tolbert and Ms. Banas, two Optrex employees, regarding questions previously terminated by Optrex's assertion of attorney-client privilege, and continue with reasonably related follow-up questions; (2) to have Defendant submit full and complete answers to Interrogatories 41-45 and fulfill Production of Documents No. 6; (3) to answer Interrogatories 46 & 47 and amend Admissions 10-15 if the Answers to

---

[1]Formerly known as the United States Customs Service.

Interrogatories 46 and 47 so require; and (4) to depose lawyers at Sonnenberg & Anderson. *See Pl.'s Mot. to Compel*, 20-21.

First, the court notes that "[t]he purpose of discovery procedures are (1) to narrow the issues; (2) to obtain evidence for use at trial; and (3) to secure information as to the existence of evidence that may be used at trial." *Wood v. Todd Shipyards*, 45 F.R.D. 363, 364 (S.D. Tex. 1968). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

> Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.

Advisory Committee's Note to 1983 Amendment to FED. R. CIV. P. 26; *see also* U.S.C.I.T. R. 26 (U.S.C.I.T. discovery rule detailing the scope of discovery at the court). In light of court rules and precedent governing discovery, the court grants the first three motions with exceptions and denies the fourth.

During the depositions of Ms. Tolbert and Ms. Banas, two Optrex employees, Plaintiff sought to uncover advice they received from Sonnenberg & Anderson attorneys about the classification of imported LCD products submitted to Customs at time of entry. *Pl.'s Mot. to Compel*, Att. B 37-38 (Dep. Tr.), Att. F 77-78 (Dep. Tr.). Defendant objected to this line of questioning, asserting that it infringes upon Defendant's attorney-client privilege. *Id.* In its motion, the government petitions the court to override Defendant's claim of privilege and allow the government to continue the depositions.

The privilege between attorney and client has long constituted a pillar of the American judicial system. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997) ("The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice."). However, courts have recognized that under certain narrowly tailored circumstances the privilege may be pierced in furtherance of justice.

Defendant asserts that among several experts, it consulted counsel when determining the content of entry documents submitted to the government. Defendant invokes attorney-client privilege to protect this information. However, since this case turns upon a finding of a negligent act or omission as delineated in 19 U.S.C. § 1592, Plaintiff requires access to information from Defendant's counsel that Defendant relied upon when classifying its imports so that Plaintiff may demonstrate such an act or omission occurred, if, indeed, it did.

If Plaintiff proves an act or omission, Defendant then has the burden to prove it did not behave negligently. *See* 19 U.S.C. § 1592(e)(4).[2] If Defendant uses the ostensibly privileged information its counsel provided as a defense, this use of information marks the defense as "affirmative." *See Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (describing various cases in which attorney-client privilege has been waived because "the

---

[2]19 U.S.C. § 1592(e) reads:
Notwithstanding any other provision of law, in any proceeding commenced by the United States in the Court of International Trade for the recovery of any monetary penalty claimed under this section–
. . .
(4) if the monetary penalty is based on negligence, the United States shall have the burden of proof to establish the act or omission constituting the violation, and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence.

client has made the decision and taken the affirmative step . . . to place the advice of the attorney in issue."); *Beery v. Thomson Consumer Elecs.*, 218 F.R.D. 599, 604 (S.D. Ohio 2003) ("An attorney-client communication is placed at issue . . . when a party affirmatively uses privileged communications to defend against or attack the opposing party") (quotations omitted) (citations omitted).

An affirmative defense, though, obviates attorney-client privilege with respect to the advice that Defendant received from counsel concerning the entry formulation because, when the content of counsel's advice becomes the object of litigation, attorney-client privilege does not apply to that advice. A "'party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation,'" *Beery*, 218 F.R.D. at 604 (quoting *Rhone-Poulenc Rorer, Inc.*, 32 F.3d at 863); *see Sax v. Sax*, 136 F.R.D. 542, 543 (D. Mass. 1991), or "when a party affirmatively uses privileged communications to defend against or attack the opposing party." *Beery*, 218 F.R.D. at 604; *see Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). Similarly, in cases where a client's state of mind or knowledge, such as whether the client acted negligently, is at issue, "the attorney-client privilege with respect to attorney-client communications that have bearing on that state of mind or knowledge is impliedly waived." *King-Fisher Co. v. United States*, 58 Fed. Cl. 570, 572 (2003).

Negligence on the part of Optrex would be disproved if Defendant can show that it reasonably relied on its attorney's advice. The government needs the content of this advice to assess the reasonableness of Defendant's reliance upon it. To unwaveringly maintain attorney-client privilege in this circumstance would effectively allow Defendant to use the privilege as a shield and sword to protect itself against any such alleged misdeed and frustrate the purpose of

discovery.  *See Sellick Equip. Ltd.  v. United States*, 18 CIT 352, 354 (1994) (describing the vast

scope of the discovery process); *accord Beery*, 218 F.R.D. at 604 (Waiver therefore stops a party

from manipulating an essential component of our legal system—the attorney client privilege—so

as to release information favorable to it and withhold anything else.) (quotations omitted).

Therefore, the court grants the government's motion to continue depositions of Ms.

Tolbert and Ms. Banas.  Importantly, Plaintiff may seek only information given by counsel to

Defendant about classification determinations submitted between October 12, 1997, and June 29,

1999--the period when Optrex made the entries at issue in this case.  *See Pl.'s Mot. to Compel*,

Ex. B.

Interrogatories 41-45 seek information virtually identical to that sought from the

depositions:  Legal advice about filling out entry documents Defendant may have received from

counsel.  For the same reasons outlined above, Defendant must submit full and complete

Answers to Interrogatories 41-45 and fulfill Production of Documents No. 6 with restrictions.  *Id.*

at 13-14.  Again, the scope of information Plaintiff may obtain from Defendant may not involve

advice, information, or events unrelated to the documents for entries submitted before October

12, 1997, or after June 29, 1999.  To ensure both parties understand and adhere to the permitted

scope of the questions, Interrogatory 41 should be modified to read:

> 41.[3] If your answer to Interrogatory No. 40 is anything other than an unequivocal "no," then state the advice Optrex obtained from Sonnenberg & Anderson regarding the classification of LCD Panels *entered into customs territory of the United States between October 12, 1997, and June 29, 1999*, under HTS tariff heading 8531 or any subheading thereof.

---

[3]Italics in the Interrogatories indicates text inserted.

Interrogatory 42 should read:

> 42. State whether Optrex intends to rely upon the advice of Sonnenberg & Anderson regarding the classification of LCD character modules *entered into customs territory of the United States between October 12, 1997, and June 29, 1999,* under HTS tariff heading 8531 or any subheading thereof.

Interrogatory 44 should read:

> 44. State whether Optrex was advised by Sonnenberg & Anderson that certain Customs HQ Rulings were applicable to the classifications of the subject merchandise *entered into customs territory of the United States between October 12, 1997, and June 29, 1999.*

Interrogatories 43 and 45, and document production request No. 6 require no modification.

Interrogatories 46 & 47 and Admissions 10-15 concern the accuracy of Exhibit B, which primarily details information Defendant provided the government about the LCD imports such as the entry date, entry number, invoice part number, part value, entered HTS, entered duty rate, and duty paid, along with the government's alleged corrections to Defendant's entries. Optrex refuses to answer these Interrogatories and Admissions because it believes Exhibit B contains errors (though it will not identify the errors) and claims it is the government's burden under 19 U.S.C. § 1592(e)(4) to establish the act or omission. However, these posited inaccuracies lie at the heart of Plaintiff's claim. *Def.'s Resp. to Pl.'s Mot. to Compel*, 12. Without an accurate account of classifications Defendant submitted to Plaintiff, the court cannot evaluate the claim.

Defendant previously submitted relevant information in the original entry documents. Providing Plaintiff with information once again to ensure Exhibit B's accuracy will not infringe upon Defendant's ability to mount an effective defense. *Id.* at 14. And while Defendant is correct in its assertion that under 19 U.S.C. § 1592(e)(4) Plaintiff bears the burden of proof "to establish the act or omission constituting the violation," Defendant's production of material it

previously submitted will not temper that burden, since the information does not in itself comprise "the material facts which establish the alleged violation," 19 U.S.C. § 1592(b)(1)(A)(iv).

However, Plaintiff suggests some information in Exhibit B did not come from Defendant's submissions to Customs. *Pl.'s Mot. to Compel*, 16. Therefore, when complying with the Interrogatories and document production requested, Defendant need not provide information about errors it detected in Exhibit B that cannot be corrected with recourse to documents or other information Defendant previously submitted to Customs. Consequently, one solution is to modify Interrogatory 47 as below:

> 47. If your answer to Interrogatory No. 46 is any other than an unequivocal "no," list all the errors or produce the document indicating such errors that Optrex alleges are contained in Exhibit B of Plaintiff's First Amended Complaint *to the extent that the list and documents contain information Optrex has previously supplied Customs*.

After answering Interrogatories 46 and 47, Defendant should then amend Admissions 10-15 in accordance with its revised Answers.[4]

These actions and modifications outlined above will allow the government to substantially fulfill its discovery needs and thereby render deposition of Defendant's attorneys redundant. Rule 3.7(a)(3) of THE ABA MODEL RULES OF PROFESSIONAL CONDUCT states that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . disqualification of the lawyer would work substantial hardship on the client." Allowing depositions of Defendant's counsel, which could force Defendant to obtain new lawyers, could prove a substantial, unnecessary burden. Plaintiff's motion to depose lawyers at

---

[4]With regard to Admission 12, the term "Line Value" does not appear in Ex. B. The court assumes this term refers to column 5, "Part Value."

Sonnenberg & Anderson is therefore denied.

For all the foregoing reasons, it is hereby

ORDERED that Plaintiff's Motion to Compel Discovery is granted in part and denied in part; it is further

ORDERED that Defendant must answer questions regarding information given by counsel to Defendant about classifications for entries submitted between October 12, 1997, and June 29, 1999; it is further

ORDERED that Defendant allow Plaintiff to continue depositions of Ms. Tolbert and Ms. Banas; it is further

ORDERED that Defendant, within two weeks of this order, submit to Plaintiff full and complete Answers to Interrogatories 41-45 and fulfill Production of Documents No. 6 in accordance with guidelines established above; it is further

ORDERED that Defendant, within two weeks of this order, answer Interrogatories 46 & 47 according to guidelines established above and amend Admissions 10-15 if new Answers so require; it is further

ORDERED that Plaintiff's motion to depose lawyers at Sonnenberg & Anderson is DENIED; and it is further

ORDERED that discovery for Plaintiff be reopened for 60 days from the date of this opinion.


Dated:_July 1st, 2004____                              /s/ Judith M. Barzilay

New York, New York                                     Judith M. Barzilay