QUIKSILVER, INC.

v.

**KYMSTA CORP; and related counterclaim.**

**No. CV 02–5497–VBF(RCx).**

United States District Court,
C.D. California.

Oct. 18, 2007.

Amy Longo, O'Melveny & Myers, Newport Beach, CA, for Plaintiff.

James D. Nguyen, Foley & Lardner, Los Angelos, CA, for Defendant.

**PROCEEDINGS: (1) ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS; AND (2) DENYING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF ROXY CONSUMER SURVEY MATERIALS AND ANSWERS TO RELATED DEPOSITION QUESTIONS**

ROSALYN M. CHAPMAN, United States Magistrate Judge.

On August 29, 2007, defendant Kymsta Corp. filed a notice of motion and motion to

compel answers to deposition questions to Kathleen McKnight Armstrong and John Sommer, a joint stipulation, and the supporting declarations of James D. Nguyen and Scott Rahn, with exhibits, and plaintiff filed the opposing declaration of Andrew H. Hall, with exhibits. On September 5, 2007, defendant filed its supplemental memorandum of points and authorities. On October 3, 2007, defendant Kymsta Corp. filed a notice of motion and motion to compel production of ROXY consumer survey materials and answers to related deposition questions, a joint stipulation, and the supporting declaration of Scott Rahn, with exhibits, and plaintiff filed the opposing declarations of Kenna Bertell and Elizabeth C. Lemond, with exhibits. Oral argument was held on October 18, 2007, before Magistrate Judge Rosalyn M. Chapman.

## BACKGROUND

### I

This is a trademark infringement action between two manufacturers of womens' clothing, as the Ninth Circuit Court of Appeals explained in detail in *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749 (9th Cir.2006). Following remand by the Court of Appeals, retired District Judge Dickran Tevrizian granted defendant's motion for supplemental discovery, and in particular allowed defendant "to take the deposition of trademark counsel ... Kathleen McKnignt [Armstrong] and the one most knowledgeable attorney from Baker and Hostetler [John Sommer]." Nguyen Decl. ¶ 2, Exh. A at 4:3–5. The deposition of Ms. Armstrong was taken on May 16, 2007, *id.*, ¶¶ 3–4, Exh. B, and the deposition of John R. Sommer, was taken on May 29, 2007. *Id.*, ¶¶ 3, 5, Exh. C.

### II

Prior to February 2003, defendant served plaintiff with requests for production of documents, which included Request no. 29, which seeks:

> All DOCUMENTS that REFER OR RE-LATE TO any studies, surveys, reports or analysis conducted by QUIKSILVER regarding the reputation, distinctiveness or value of the MARKS, or clothing products or goods bearing the MARKS.

Jt. Stip. at 7:2–6. On February 21, 2003, plaintiff responded to this request, objecting on the grounds of attorney-client privilege and/or the attorney work product doctrine, and stating plaintiff had no responsive documents. Jt. Stip. at 7:7–12; Defendant's Appendix ("App."), Exh. 11. Subsequently, in 2007, plaintiff provided a supplemental response, stating, in part:

> Quiksilver's confidential marketing plans, business plans and other internal studies and reports regarding the ROXY marks are highly sensitive and not relevant to any of the claims and defenses at issue in this litigation. Quiksilver further objects to this request on the grounds that it seeks confidential business information or competitively or technically sensitive information.... Based on the foregoing objections, Quiksilver will not produce any documents in response to this request.

Jt. Stip. at 7:13–23.

Additionally, in 2007, defendant requested production of documents attached to a notice of a supplemental Rule 30(b)(6) deposition of plaintiff, with Request no. 7 seeking:

> Any and all DOCUMENTS that constitute, evidence, memorialize, refer or relate to any consumer surveys, market surveys, studies or analysis performed by or on behalf of QUIKSILVER during the period of June 1, 2003 to the present regarding or relating to use of any mark containing the term "Roxy."

Jt. Stip. at 7:28–8:3. On May 14, 2007, plaintiff responded:

> Quiksilver objects to this request on the grounds set forth in its Preliminary Statement and General Objections above. In addition, Quiksilver objects to this request as vague, ambiguous, overbroad and unduly burdensome. Quiksilver further objects to this request to the extent that it seeks confidential business information or competitively or technically sensitive information. Quiksilver's confidential marketing plans, business plans and other internal studies and reports regarding the ROXY marks are highly sensitive and not relevant to any of the claims and defenses at issue in this litigation. In addition, Quiksilver objects to this request as duplicative

of requests previously propounded by Kymsta in its Supplemental Requests for Production to Quiksilver. Based on the foregoing objections, Quiksilver will not produce any additional documents in response to this request.

Jt. Stip. at 8:4–16; Lemond Decl. ¶ 3. Defendant's notice of a supplemental Rule 30(b)(6) deposition of plaintiff also sought testimony regarding "studies, surveys, reports or analysis" conducted since June 1, 2003 regarding "the reputation, distinctiveness or value[,]" and the "core or target" consumers and retail customers for the ROXY MARKS, the QUIKSILVER ROXY MARK, and "the marks 'Roxy Quiksilver' or 'Roxy by Quiksilver[,]' " Jt. Stip. at 16:4–28.

Despite its objections, plaintiff produced to defendant approximately 2900 pages of consumer surveys and marketing materials during the meet-and-confer process. Lemond Decl. ¶ 4; *see also* App., Exhs. 1–7; Rahn Decl. ¶ 2, Exh. 8 (Deposition of Kenna Bertell) at 65:6–78:25 § plaintiff has; since 2005, conducted marketing studies or surveys regarding the ROXY brand, including twice yearly brand health studies, which involve "the brand perception of the consumer towards Roxy".

## DISCUSSION

### III

Rule 26(b)(1) permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party. . . ." Fed.R.Civ.P. 26(b)(1). " 'Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.' " *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635 (C.D.Cal. 2005) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal.1998)). Yet all discovery, and federal litigation generally, is subject to Rule 1, which directs that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R.Civ.P. 1; *Moon*, 232 F.R.D. at 635.

Rule 30 provides that counsel may make objections to deposition questions and "may instruct a deponent not to answer [a question] only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." [1] Fed.R.Civ.P. 30(d)(1). Thus, attorneys representing a deponent or party may, of course, object to questions asked a witness, provided the objections are not disruptive of the proceedings. *Id.* Indeed, a party waives certain objections, such as to the form of questions or answers or to other errors that might be obviated, removed, or cured if promptly presented, by failing to make the objection at the deposition. Fed. R.Civ.P. 32(d)(3)(B); 8 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2113 (1994). However, "[u]nder the plain language of Fed.R.Civ.P. 30(d)(1), counsel may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to suspend a deposition in order to present a motion [for a protective order]." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995); *Redwood v. Dobson*, 476 F.3d 462, 467–69 (7th Cir.2007).

Questions of evidentiary privilege arising in the course of the adjudication of federal rights, such as here, are governed by the principles of federal common law. *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989); Fed.R.Evid. 501. "Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992). "The attorney-client privilege may be divided into eight essential elements: (l) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the

---

**1.** Rule 30(d)(4) provides that a party or deponent, "[a]t any time during a deposition . . . upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party," may seek a court order to cease the deposition or to limit the scope and manner of the taking of the deposition as provided in Rule 26(c). Fed.R.Civ.P. 30(d)(4).

communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 n. 2 (9th Cir.1992) (citation omitted); *United States v. Martin,* 278 F.3d 988, 999 (9th Cir.2002). A corporation may claim the attorney-client privilege. *Commodity Futures Trading Comm'n. v. Weintraub,* 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985); *Upjohn Co. v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981).

## IV

■ One of the discovery disputes before the Court focuses on plaintiff's objections to approximately 54 questions to witnesses Kathleen McKnight Armstrong and John Sommer. Plaintiff's counsel objected to all the questions on the ground of attorney-client privilege, and plaintiff's counsel directed the witnesses not to answer the questions. Additionally, plaintiff's counsel objected to many of the questions on additional grounds, such as calling "for legal conclusion and opinion[,]" relevancy, and the like.

Defendant argues that plaintiff, at the April 29, 2003 deposition of Robert McKnight, plaintiff's CEO, expressly waived "any attorney-client privilege that might have otherwise applied to ... Quiksilver's strategy in using and registering QUIKSILVER ROXY as a composite mark first and separately from ROXY by itself...." Jt. Stip. at 22:15–19. Defendant cites the following exchange at Mr. McKnight's deposition:[2]

Q  Can you tell me why Quiksilver decided to register the phrase Quiksilver/Roxy as opposed to just Roxy by itself when it submitted its application?

MR. YODER: Let me note an objection to the extent that gets into attorney-client communications that would be privileged and I would both caution and instruct you, Mr. McKnight, not to disclose confidential attorney-client communications

in the course of your answer. Aside from such matters, you can answer the question if you have a recollection and personal knowledge.

THE WITNESS: Okay. [¶] Typical of most companies, especially a small company like we are, when you launch a brand as we did in 1990, you're never sure if it's going to take, if it's going to reap the benefits, so you go out there with it, you do an initial kind of a check to make sure it's not owned by Coca-Cola or Disney or somebody that's going to be a problem, but if it isn't, you go out there with it, and we were a small company at that point and I told you about in '91–'92 having the problems; we were trying to save budget, save expense, so you don't spend money foolishly or unnecessarily so we didn't at that point on the Roxy brand. [¶] We go along, all of a sudden Roxy board [sic] sort of catches fire, we're doing quite a bit of business, and so we start, you know, coming up with a registration strategy. There's always a legal strategy, which I'm not a lawyer as I said earlier, I know a lot of stuff goes on behind closed doors about the legal strategy, especially when you're talking about Charlie Exon, Kathy Armstrong, Michael Owen, the people in Europe, which is Bernard Mariette and Harry Hodges at the time, so there's lots of strategy going on about how to register the brand not only in America but globally. Then there's a sort of a commercial strategy, which to me has always been just market the brand, get it out there in the eyes of the consumer, get it placed at distribution, do marketing, do the best job you know how to gain traction with a mark, and hopefully you don't receive some letter from somebody, so along this line as I sat back and looked at the word Roxy world-wide, R-o-x-y or R-o-x-i-e, it was sort of a mixed bag of usage here and registered here, for something over in

---

**2.** At the hearing on defendant's motions, defendant's counsel also argued that Mr. McKnight's testimony at trial, Exhibit 1 to defendant's Supplemental Memorandum, also waived plaintiff's attorney-client privilege. However, the trial testimony cited by defendant's counsel was defendant's cross-examination of Mr. McKnight, not plaintiff's case-in chief, as misrepresented by defendant's counsel. Thus, this argument does not avail defendant.

Germany for something else, down in Italy, in Australia, so it's kind of a mess, and so at the time I think it was advised by this group of legal counsel to use Quiksilver/Roxy in some cases alone, and Quiksilver/Roxy in other cases, double the logo Quiksilver/Roxy in other cases to get it in the various classifications as a legal strategy, so that's why on this one it's Quiksilver/Roxy.

Nguyen Decl. ¶ 12, Exh. L at 370:21–372:22.

■ Here, the Court finds Mr. McKnight did not waive plaintiff's attorney-client privilege during his 2003 deposition. As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship, not the holder's intent to waive the privilege." *Tennenbaum v. Deloitte & Touche,* 77 F.3d 337, 341 (9th Cir.1996). This is because:

> [t]he doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable.

*Id.* at 340–41. Unlike the cases defendant cites, in which a party voluntarily disclosed privileged communications to gain a legal advantage, *see Board of Trustees of the Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.,* 237 F.R.D. 618, 624–28 (N.D.Cal. 2006) (applying federal circuit law and concluding plaintiff waived attorney-client privilege when it submitted declarations revealing attorney-client communications to the PTO "to gain a legal advantage by obtaining an enforceable patent"); *Starsight Telecast, Inc. v. Gemstar Dev. Corp.,* 158 F.R.D. 650, 653–55 (N.D.Cal.1994) (finding partial waiver of attorney-client privilege when party presented two declarations and provided extensive deposition testimony discussing prior art), Mr. McKnight did not reveal the substance of any attorney-client communications in his deposition answer, but simply noted that, as part of a broader discussion of the commercial strategy for marketing the Roxy line, he received legal advice regarding the Roxy brand. *See Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.,* 2007 WL 781252, *3 (N.D.Ill.2007) ("There is a significant difference between indicating the fact or topic of a confidential [communication] with an attorney and revealing its content. The latter effects a waiver of the attorney-client privilege, while the former does not."). Therefore, Mr. McKnight's deposition response did not waive plaintiff's attorney-client privilege.

Defendant also contends, however, that plaintiff's attorney-client privilege has been impliedly waived by plaintiff filing this action, which "involv[es] registrations acquired via the applications prosecuted by [Kathleen McKnight Armstrong and John Sommer]." Jt. Stip. at 25:3–16. Defendant, thus, claims that any time a party files a trademark infringement suit, it waives any and all attorney-client privilege concerning communications between it and counsel regarding the trademark registration(s) allegedly infringed. However, defendant has cited absolutely no pertinent authority to support this argument, which is without merit. *See, e.g., In re Geothermal Res. Int'l, Inc. v. Lumsden,* 93 F.3d 648, 653 (9th Cir.1996); *Rhone–Poulenc Rorer Inc. v. The Home Indemnity Co.,* 32 F.3d 851, 863–64 (3d Cir.1994); *see also Zenith Radio Corp. v. United States,* 764 F.2d 1577, 1580 (Fed.Cir.1985) ("A party does not automatically waive [the attorney-client or work product] privileges, which protect the formulation of legal opinions or litigation strategy, simply by bringing suit."); *Beery v. Thomson Consumer Elecs., Inc.,* 218 F.R.D. 599, 605–06 (S.D.Ohio 2003) ("[T]he attorney client privilege permits [plaintiff] to freely consult with his attorneys and to rely on their infringement advice without fear that the contents of these consultations will be discoverable during litigation.").

■ Although the Court finds some of plaintiff's attorney-client privilege objections to the deposition questions were not well-taken, and plaintiff's counsel, thus, improperly instructed the witnesses not to answer certain deposition questions, Fed.R.Civ.P. 30(d)(1), other objections raised by plaintiff's counsel to the same questions were well-taken; thus, the witnesses need not now

respond to those deposition questions. For instance, although Ms. Armstrong and Mr. Sommer were deposed as percipient witnesses, defendant repeatedly asked questions improperly seeking their legal or expert opinions, *cf. United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir.) ("The lay witness may not, however, testify as to a legal conclusion, such as the correct interpretation of a contract."), *cert. denied*, 534 U.S. 972, 122 S.Ct. 393, 151 L.Ed.2d 298 (2001); *Evangelista v. Inlandboatmen's Union of the Pac.*, 777 F.2d 1390, 1398 n. 3 (9th Cir.1985) (same), and since plaintiff's objections of "legal conclusion" were proper, the witnesses need not answer these questions.

## V

■ The other discovery dispute focuses on certain survey results and focus group data collected by plaintiff between 2005 and 2007 that "relate to [plaintiff's] consideration of possible plans for expansion of the ROXY brand and/or products sold under the ROXY mark." Bertell Decl. ¶¶ 2–3. Defendant seeks to compel plaintiff to produce documents responsive to Request no. 29 of defendant's document requests and Request no. 7 attached to a notice for a supplemental Rule 30.(b)(6) deposition, both pertaining to plaintiff's survey results, and to compel deposition testimony at the supplemental Rule 30(b)(6) deposition about such documents.

According to plaintiff's Vice–President of Marketing Women's Brands, these survey and focus group documents:

do not refer to or include information about whether consumers perceive ROXY to be a personal name. These materials also do not include information about whether consumers perceive the QUIK-SILVER ROXY and ROXY trademarks to be the same or similar. These materials do not address what consumers perceived about the ROXY mark or the ROXY brand in 1990 through 1992.

*Id.* ¶ 5. The Court accepts Mr. Bertell's declaration as true, and finds the information defendant seeks is not "reasonably calculated to lead to the discovery of admissible evi-

dence.' " *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir.2005) (citation omitted). In other words, the requested documents and testimony are not relevant.

Nevertheless, defendant asserts the requested information is relevant since it relates to:

(1) whether ROXY has independent trademark significance from the QUIKSILVER house mark (*i.e.*, whether ROXY was or is perceived as part of the Quiksilver company); (2) ROXY's continuing commercial impression (whether the ROXY and QUIKSILVER ROXY marks are or were seen as creating the same commercial impression); (3) what type of consumer confusion exists about the ROXY brand;

([4]) the possible impact upon consumers and Quiksilver if the Court were to require Quiksilver to return to using the composite QUIKSILVER ROXY mark instead of the standalone ROXY mark; and ([5]) whether Quiksilver has any protectable interest in expanding its ROXY brand.

. . .

Jt. Stip. at 12:24–13:10. Defendant is not correct. With regard to independent trademark significance and consumer confusion, the relevant question is whether the ROXY mark acquired independent trademark significance in 1990 and 1991, before defendant first used "Roxywear," *see Quiksilver, Inc.*, 466 F.3d at 757–58,[3] and consumer surveys conducted some 15 years after the fact are neither probative, nor likely to lead to the discovery of admissible evidence regarding this issue. Likewise, with respect to continuing commercial impression, the relevant issue for "tacking" purposes is whether "QUIK-SILVER ROXY" and "ROXY" created " 'the same, continuing commercial impression' at the time the 'ROXY' brand was introduced[,]" *see id.* at 758–60, and current consumer surveys are irrelevant to this issue. Furthermore, the Court cannot discern the relevancy of the information to any post-trial remedy to which a party might be entitled or to any legal interest plaintiff might have in

---

**3.** " '[C]onsumer awareness of the product mark apart from the fame of the associated house mark,' the 'strength of the public reputation of the product mark,' and the 'nature and context of promotion' are ... 'reliable test[s] of the independence of the product mark from its parent house mark.' " *Quiksilver, Inc.*, 466 F.3d at 757–58.

expanding the ROXY brand. Additionally, to the extent defendant argues the information is relevant to "shed light on the accuracy of Quiksilver's statement[ ] to the Court" that "it has no intention of excluding Kymsta from the contemporary sportswear market," Jt. Stip. at 14:17–22, the Court disagrees. Even if the withheld documents and related testimony address plaintiff's future plans to sell contemporary sportswear under the ROXY brand, the information would still not be relevant since, as plaintiff aptly points out, the lawsuit challenges defendant's use of "Roxywear" to sell contemporary sportswear, and not the use of any other non-infringing brand by defendant to sell contemporary sportswear or other clothing. See Jt. Stip. at 21:5–26 ("Quiksilver now fully intends to argue that Kymsta should not be permitted to use the Roxywear mark on contemporary sportswear—or anywhere else. Quiksilver has no objection to Kymsta continuing to sell contemporary sportswear so long as it does not try to trade of the ROXY name."). Finally, to the extent defendant suggests the information might reveal whether ROXY is perceived as a personal name, see Jt. Stip. at 14:9–12, plaintiff has presented evidence demonstrating the documents contain no such information. See Bertell Decl. ¶ 5. Given this lack of relevance, defendant's motion to compel plaintiff to produce the withheld documents and for further testimony about those documents at a supplemental Rule 30(b)(6) deposition should be denied.

### ORDER

1. Defendant's motion to compel answers to deposition questions is granted, in part, and denied, in part, as set forth herein, and deponent Kathleen McKnight Armstrong shall answer deposition question no. 47 by submitting to plaintiff a written declaration under penalty of perjury, stating the question and her answer, no later than thirty (30) days from the date of this Order.

2. Defendant's motion to compel production of ROXY consumer materials (Request no. 29 of defendant's request for production of documents and Request no. 7 attached to the notice of supplemental Rule 30(b)(6) deposition), and for testimony at a supplemental Rule 30(b)(6) deposition regarding such documents, is denied.